UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN HARRIS,<br><br>    Plaintiff,<br><br> -against-<br><br>CITY OF NEW YORK; Lieutenant ANGEL LEON; Detective KRISTEN SWINKUNAS (Shield #2190); Police Officer ANTONELLA JIMENEZ (Shield #5209); Police Officer MAXWELL BALTZER (Shield No. 15451); and Lieutenant JOHN LANE,<br><br>    Defendants. | No. 20-CV-10864 (LGS)<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

## PRELIMINARY STATEMENT

1. In September 2020, Brian Harris, a law-abiding New York City sanitation worker, rushed to a hospital in Manhattan after learning that his son had tragically been a victim of gun violence.

2. Instead of getting to help his son, Mr. Harris ended up handcuffed in a wheelchair inside the very same hospital while a doctor dug police taser prongs out of his skin.

3. The police had no justification to use a taser against Mr. Harris.

4. The NYPD's treatment of him was simply wrong.

5. The actions of the police caused Mr. Harris significant physical pain and made an already frightening and traumatic situation much worse.

1

## JURISDICTION AND VENUE

6. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a).

7. Venue lies in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Manhattan.

## PARTIES

8. Plaintiff Brian Harris is a 44-year-old Black man who resides in the Bronx. He is employed by the New York City Department of Sanitation as a sanitation worker.

9. Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

10. Defendant Angel Leon is an NYPD lieutenant assigned to the 26th Precinct.

11. Defendant Kristen Swinkunas is an NYPD detective assigned to the 26th Precinct.

12. Defendant Antonella Jimenez is an NYPD police officer assigned to the 26th Precinct.

13. Defendant Maxwell Baltzer is an NYPD police officer assigned to the Emergency Services Unit who was at the relevant time assigned to the 26th Precinct.

14. Defendants Leon, Swinkunas, Jimenez, Baltzer, and Lane (collectively referred to as the "Individual Defendants") are sued in their individual capacities.

15. Plaintiff complied with all conditions precedent to bringing suit against the City of New York under the General Municipal Law, and a 50-h hearing was held on or about February 8, 2021.

## JURY DEMAND

16. Plaintiff demands a jury trial.

## FACTS

17. In the early morning hours of Wednesday, September 2, 2020, Mr. Harris received a disturbing phone call.

18. The caller told Mr. Harris that his son had been shot and had been driven to Mount Sinai Morningside Hospital in Manhattan in a car belonging to Mr. Harris's family.

19. Distraught, Mr. Harris rushed to the hospital.

20. As Mr. Harris approached the hospital's emergency entrance, he saw the vehicle belonging to his family standing in the street.

21. A door to the vehicle was open, and Mr. Harris could see a lot of blood inside.

22. Police were standing near the vehicle.

23. Mr. Harris approached the police, identified himself as the owner of the vehicle, and said, in sum and substance, that his son had been the victim of the shooting.

24. Mr. Harris explained, in sum and substance, that he had the keys to the vehicle and wanted to move it out of the street.

25. Without expressing any kind of compassion or understanding, police told Mr. Harris, in sum and substance, to get away from the vehicle.

26. While Mr. Harris and the police were engaged in conversation about the vehicle, an NYPD supervisor—on information and belief, Defendant Leon—said, in sum and substance, "Tase him. Tase him."

27. None of the other police present at the scene had taken any steps to draw, let alone deploy, their tasers.

28. None appeared to believe that the use of a taser was necessary or appropriate under the circumstances.

29. Acting on these orders, Defendant Baltzer tased Mr. Harris.

30. The NYPD Patrol Guide provides that the use of a taser is a "significant intermediate use of force option" to be used "only against persons who are actively resisting, exhibiting active aggression, or to prevent individuals from physically injuring themselves."

31. The Patrol Guide instructs that police should consider the following factors, among others, in deciding whether to use a taser:

    a. The nature and severity of the crime/circumstances

    b. Actions taken by the subject

    c. Duration of the action

    d. Immediacy of the perceived threat or harm to the subject, members of the service, and/or bystanders

    e. Whether the subject is actively resisting custody

    f. Whether the subject is attempting to evade arrest by flight

    g. Number of subjects in comparison to the number of [police]

    h. Size, age, and condition of the subject in comparison to [police]

    i. Subject's violent history, if known

    j. Presence of hostile crowd or agitators

    k. Subject apparently under the influence of a stimulant/narcotic which would affect pain tolerance or increase the likelihood of violence.

32. The purported offense of which Mr. Harris was accused—obstructing governmental administration in the second degree—was a very minor one.

33. Mr. Harris was not an immediate threat to himself or others.

34. Mr. Harris was not actively resisting custody.

35. At no time before he was tased did Mr. Harris engage in any violent or assaultive behavior toward police or anyone else.

36. At no time before he was tased did police attempt to take Mr. Harris to the ground.

37. There were at least five NYPD members of the service in the immediate vicinity.

38. There was no hostile crowd present; Mr. Harris was alone with police on a quiet Manhattan street outside a hospital.

39. Mr. Harris was not, and did not appear to be, under the influence of drugs or alcohol.

40. Mr. Harris was a concerned father who had come to the hospital where his son had been admitted as a gunshot victim.

41. Simply put, there was no justification to deploy a taser against Mr. Harris, and the use of such significant force was clearly unreasonable under the circumstances.

42. The discharge of the taser knocked Mr. Harris to the ground forcefully.

43. He immediately began screaming in pain.

44. He struck his wrist and sustained scrapes and bruises.

45. Medical personnel came out of the hospital when Mr. Harris yelled for help.

46. Mr. Harris was handcuffed on the ground.

47. Emergency medical personnel attended to Mr. Harris while he was on the ground and helped him into a wheelchair.

48. Inside the hospital, Mr. Harris learned that his son had survived being shot.

49. Mr. Harris remained tightly handcuffed while medical personnel removed the taser prongs from his body.

50. The removal of the prongs was very painful.

51. After roughly two hours handcuffed at the hospital, police transported Mr. Harris to the 26th Precinct.

52. On the way to the precinct, a female member of the service—on information and belief, Defendant Swinkunas—told Mr. Harris, in sum and substance, that she could have handled the situation without arresting him and that she did not know why Defendant Leon had handled the situation as he did.

53. Mr. Harris was processed and detained at the precinct for several hours.

54. As a result of being tased, Mr. Harris sustained a serious injury to his left wrist, causing significant pain and discomfort.

55. Mr. Harris ultimately had surgery to correct the injury.

56. He also suffered, among other things, scrapes, cuts, and bruises.

57. Perhaps most of all, Mr. Harris felt that his dignity had been assaulted, not just his body.

58. Mr. Harris was already deeply upset that his son had been the victim of gun violence.

59. Defendants made a traumatic situation that much worse by turning *Mr. Harris* into a victim of violence as well.

## CAUSES OF ACTION

### FIRST CLAIM
### 42 U.S.C. § 1983 – Fourth / Fourteenth Amendments – Excessive Force
### Against the Individual Defendants

60. Plaintiff realleges the preceding paragraphs as if set forth here.

61. The Individual Defendants used or caused to be used objectively unreasonable force against Plaintiff and/or failed to intervene to prevent the use of such force despite having a reasonable opportunity to do so, proximately causing injury.

62. At all relevant times, the Individual Defendants were acting under color of state law.

63. The Individual Defendants' conduct proximately caused Plaintiff's injuries.

64. The Individual Defendants' conduct was willful, wanton, and reckless.

### SECOND CLAIM
### Common Law Assault
### Against Defendant City of New York

65. Plaintiff realleges the preceding paragraphs as if set forth here.

66. The Individual Defendants placed Plaintiff in imminent apprehension of harmful or offensive bodily contact.

67. Plaintiff did not consent to harmful or offensive bodily contact, and such contact would not have otherwise been privileged.

68. At the relevant time, the Individual Defendants were acting within the scope of their employment as employees, agents, and/or servants of Defendant City of New York.

69. Their acts proximately caused Plaintiff's injuries.

## THIRD CLAIM
## Common Law Battery
## Against Defendant City of New York

70. Plaintiff realleges the preceding paragraphs as if set forth here.

71. At the direction of another of the Individual Defendants, Defendant Baltzer made harmful or offensive bodily contact with Plaintiff.

72. Plaintiff did not consent to harmful or offensive bodily contact, and such contact was not otherwise privileged.

73. At the relevant time, Defendant Baltzer and the Individual Defendant who gave the order were acting within the scope of their employment as employees, agents, and/or servants of Defendant City of New York.

Their acts proximately caused Plaintiff's injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages in an amount to be determined at trial;

C. Reasonable costs and attorneys' fees under 42 U.S.C. § 1988:

D. Pre- and post-judgment interest to the fullest extent permitted by law; and

E. Any additional relief the Court deems just and proper.

Dated: April 30, 2021
New York, New York

                                                   KAUFMAN LIEB LEBOWITZ
                                                   & FRICK LLP

                                                   _____/s/_____
                                                   Douglas E. Lieb
                                                   Alanna Kaufman

                                                   10 E. 40th Street, Suite 3307
                                                   New York, New York 10016
                                                   (212) 660-2332
                                                   dlieb@kllf-law.com

                                                   *Counsel for Plaintiff*