

**GEORGIA M. PESTANA**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**CHRISTOPHER G. ARKO**
*Senior Counsel*
carko@law.nyc.gov
Phone: (212) 356-5044
Fax: (212) 356-3509

December 10, 2021

**BY ECF**
Hon. Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

>   Re:  <u>Brian Harris v. City of New York, et al.</u>, 20 Civ. 10864 (LGS)

Your Honor:

I am a Senior Counsel in the New York City Law Department, attorney for defendants City of New York, Lieutenant Leon, Detective Swinkunas, Officer Jimenez, Lieutenant Lane, and Officer Baltzer in the above-referenced matter. I write pursuant to Your Honor's Individual Rule III(A) and the Court's Scheduling Order of July 30, 2021 to respectfully request a premotion conference for leave to move pursuant to Rule 56 for summary judgment as to all claims in the complaint. The bases for defendants' anticipated motion are set forth below.

By way of background, defendants filed a premotion conference letter on June 25, 2021 seeking leave to move for summary judgment before discovery had completed. Plaintiff opposed, and the Court denied defendants' application with leave to renew after fact discovery had completed. Consistent with the Scheduling Order and the Court's additional Order of July 30, 2021 (ECF No. 43), the parties completed fact discovery (with the exception of depositions of treating physicians) on November 26, 2021. Further, consistent with the Court's Order of November 17, 2021, one additional fact witness was deposed on December 8, 2021.

In the early morning hours of September 2, 2020, plaintiff's son was shot in the leg and driven by some of his friends to Mt. Sinai Morningside Hospital in a Chevy Tahoe SUV that belonged to plaintiff. The friends then fled the scene leaving the Tahoe in front of the emergency room. The defendant officers heard transmissions over their police radios about shots fired in the vicinity of 125th Street and Amsterdam Avenue and that a gunshot victim had shortly thereafter walked into the hospital. The officers responded to the hospital, where the Tahoe was parked part-way on the sidewalk. The front passenger side door was open and there appeared to be blood in the passenger's seat. The officers suspected the vehicle was related to the shooting so they secured it and notified the Evidence Collection Team to process it for evidence.

While the officers stood near the vehicle plaintiff arrived at the hospital. Lieutenant Leon's body-worn camera ("BWC") captured what follows. Plaintiff approached the vehicle in direct defiance of numerous orders from the officers to back away. The officers repeatedly told plaintiff this is a crime scene, don't touch this car. Plaintiff responded by repeatedly yelling you cannot tell me what to do with my property, I'm not backing away from anything, please get away from me. Lieutenant Lane told plaintiff you're going to be under arrest, and plaintiff yelled I don't care, please get away from me, you already looked inside the car, I'm not stepping away from anything. Lieutenant Lane then told plaintiff to turn around, and plaintiff responded by yelling please don't touch me and raising his hands up over his head. Lieutenant Lane testified at his deposition that he thought plaintiff may have been raising his hands up to strike him. Lieutenant Lane attempted to grab plaintiff's hands to get them in handcuffs but was unable to do so because plaintiff was moving them around. While Lieutenant Lane struggled to get control of plaintiff, Lieutenant Leon said repeatedly get your taser, taser him. Officer Baltzer then approached plaintiff, yelled "taser, taser, taser," and pulled the trigger of his taser one time. Plaintiff fell to the ground and was placed in handcuffs.

While there are two brief periods of time during which plaintiff is not visible on the BWC video, they are insufficient to create a dispute of material fact in light of deposition testimony. The Second Circuit has held that "'our precedent suggests it is *not* excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest.'" Jones v. Treubig, 963 F.3d 214, 228 (2d Cir. 2020) (emphasis in original) (quoting Penree v. City of Utica, 694 Fed. Appx. 30, 33 (2d Cir. 2017) and citing MacLeod v. Town of Brattleboro, 548 Fed. Appx. 6, 6-7 (2d Cir. 2013) and Crowell v. Kirkpatrick, 400 Fed. Appx. 592, 595 (2d Cir. 2010)). Plaintiff cannot dispute that Lieutenant Lane was attempting to place him under arrest before he was tased. He also cannot dispute that he was warned he would be tased. He testified at his deposition that he heard the police say "tase him" between three and five times before he was tased. Plaintiff may contend that this was meant to be a warning to the officers and not himself. However, the fact is that plaintiff not only heard "tase him" multiple times, he also understood it meant that he might be tased; indeed, he testified that after hearing it for the first time he thought "maybe that was a scare tactic" – in other words, a warning. Furthermore, plaintiff testified that before he was tased he never backed away from the car (despite being ordered to do so repeatedly), he did nothing to comply with the officers' directives other than put his hands up in the air (a gesture that Lieutenant Lane interpreted as threatening and which would not facilitate being handcuffed), and he never put his hands behind his back to be handcuffed. He also testified that when an officer first reached out to grab him he turned away from the officer and towards the car, but did not remember what he did with his hands at that point. Lieutenant Lane testified that when he first reached out to grab plaintiff's arms, plaintiff raised them up and away from Lieutenant Lane's grasp. Lieutenant Leon and Officer Blatzer thought plaintiff was turning towards the car in an effort to get in the passenger seat in direct defiance of their orders. The officers thus reasonably interpreted plaintiff's conduct as actively resisting arrest, which continued up until the time he was tased. The use of the taser here was therefore a reasonable use of force under Second Circuit precedent.

Moreover, the Second Circuit has found where an arrestee "contravene[es] clear, repeated instructions" from police, the use of a taser is reasonable to avoid "a 'hands-on' situation with an unrestrained, dangerous individual." MacLeod, 548 Fed. Appx. at *4, *6 (quoting Tracy v. Freshwater, 623 F.3d 90, 97 (2d Cir. 2010)); see also Muschette v. Gionfriddo,

910 F.3d 65, 70 (2d Cir. 2018) (granting qualified immunity for using a taser after it appeared to the officer that plaintiff was ignoring his instructions).  Such a "hands-on" confrontation would have posed a particular danger here, where plaintiff was six inches taller and nearly 100 pounds heavier than the largest officer on scene.

The Second Circuit has also held that repeated defiance of police orders "do[es] not evince 'passive resistance' merely because [plaintiff] was not actually in the act" of physically resisting.  MacLeod, 548 Fed. Appx. at *5 (citing Crowell, 400 Fed. Appx. at 595 and Davis v. Callaway, No. 05 CV 127 (DJS), 2007 U.S. Dist. LEXIS 29468 at *14 (D. Conn. Apr 9, 2007) (noting that "[officer] could reasonably have interpreted [arrestee's] previous noncompliance, i.e. standing up, as indicative of the possibility of further resistance")).  Plaintiff cannot dispute that the officers repeatedly ordered him to back away from the vehicle, and that he refused to comply.  Furthermore, when Lieutenant Lane told plaintiff he was going to be under arrest, he responded I don't care, I'm not backing away from anything, and when Lieutenant Lane said turn around, plaintiff responded please don't touch me.  Plaintiff's obstinate defiance is further evidence of the fact that he was actively resisting and adds to the totality of the circumstances underscoring that the use of the taser was reasonable.[1]

Alternatively, the defendants are entitled to qualified immunity. When analyzing whether an official is entitled to qualified immunity, "the court must consider whether: (1)...the official violated a statutory or constitutional right, and (2)...the right was clearly established at the time of the challenged conduct'" Jones, 963 F.3d at 224 (alterations in original) (quotation marks omitted). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Muschette, 910 F.3d at 69 (quotation marks and citation omitted). "An officer is entitled to qualified immunity if *any* reasonable officer out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful. [O]ur inquiry [on qualified immunity] is not whether the officer *should have* acted as he did. Nor is it whether a singular, hypothetical entity exemplifying the 'reasonable officer'...*would have* acted the same way." Id. at 70 (quotation marks omitted; emphasis and alterations in original).

As of September 2, 2020, "there was no clearly established law that would fairly warn police officers that a taser could not be used against a resisting arrestee. Indeed, to the contrary, our precedent suggests it is *not* excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest." Jones, 963 F.3d at 228 (quotation marks, citation, and alteration omitted; emphasis in original).  As noted above, the officers reasonably believed that plaintiff was actively resisting arrest and had been warned that he was about to be tased.  Further, plaintiff repeatedly refused to comply with police orders.  There was thus no clearly established right for plaintiff to be free from the use of the taser, and the officers are entitled to qualified immunity.

---

[1] While plaintiff testified at his deposition that he did not hear the officers tell him to back away from the vehicle, this is immaterial.  As an initial matter, it is belied by his 50-h testimony where he testified that he heard the police repeatedly say move away from the car, which he refused to do.  Further, it is immaterial whether plaintiff contends he actually heard the warnings or not.  The material fact is that the officers reasonably believed plaintiff heard and understood them as evinced by the BWC video, where plaintiff verbally responds directly to the officers' orders.

3

I thank the Court for its consideration herein.

          Respectfully submitted,

          /s/ *Christopher G. Arko*
          Christopher G. Arko
          Senior Counsel

cc:    Doug Lieb, Esq. (by ECF)
       Alanna Kaufman, Esq. (by ECF)
       *Attorneys for Plaintiff*