**Kaufman Lieb Lebowitz & Frick**
attorneys at law

(212) 660-2332
10 E. 40th St., Suite 3307
New York, NY 10016
www.kllf-law.com

December 16, 2021

**By ECF**

Hon. Lorna G. Schofield
United States District Judge
Southern District of New York

    Re:    *Harris v. Leon*, No. 20-CV-10864 (LGS)

Your Honor:

    We write on behalf of Plaintiff Brian Harris in opposition to Defendants' premotion letter concerning their anticipated motion for summary judgment (ECF No. 51). The anticipated motion should be denied because the core factual issue in the case is disputed and must be resolved by the jury.

    Defendants attempted to short-circuit discovery in this case by filing a pre-discovery motion for summary judgment based solely on the body-worn camera (BWC) footage. ECF No. 37. The Court denied leave to file that motion and ordered the parties to conduct fact depositions. ECF No. 41. As the Court acknowledged during the parties' July 22 telephone conference, the crucial question for purposes of liability is whether Mr. Harris was actively resisting arrest *at the time he was tased*, after he put his hands in the air. The BWC footage does not answer this question because it does not depict Mr. Harris during this crucial moment.

    After depositions, there remains a vigorously contested dispute of fact as to whether Mr. Harris was resisting arrest at the time he was tased. Mr. Harris clearly testified that he was not resisting, and Defendants gave varied and conflicting accounts. Unable to reconcile these inconsistencies, Defendants' pre-motion letter largely ignores the deposition testimony and repackages Defendants' prior arguments based on the BWC footage. But because neither the footage nor the testimony establishes beyond dispute what happened at the moment Mr. Harris was tased, summary judgment is inappropriate, and this case must proceed to trial.

**I.    The Relevant Question for Purposes of Liability and Qualified Immunity is Whether Mr. Harris Was Resisting Arrest "At the Time of the . . . Tasing"**

    Second Circuit law is clear that the relevant question is whether a plaintiff was resisting arrest "at the time of the . . . tasing"—not in the moments leading up to it. *Jones v. Treubig*, 963 F.3d 214, 228 (2d Cir. 2020). In *Jones*, decided a few months before the incident at issue in this case, the Second Circuit held that "right of a non-resisting, non-threatening arrestee to be free from an officer's use of a taser" had been clearly established since 2000. *Id.* at 227. It further held that although officers were

Alanna Kaufman*  •  Douglas E. Lieb‡  •  David A. Lebowitz  •  Alison Frick*

Adam Strychaluk  •  Alyssa Isidoridy

*Also admitted to practice in New Jersey  ‡Also admitted to practice in California and Connecticut

justified in deploying a taser once, they were not justified in deploying it a second time because the plaintiff was no longer resisting "at the time of the second tasing." *Id.* The relevant inquiry thus focuses on the specific moment the taser is deployed. *Id.*; *accord Rogoz v. City of Hartford*, 796 F.3d 236, 248 (2d Cir. 2015) (rejecting as "meritless" Defendants' contention that it was "immaterial" whether plaintiff "was complying officers' directions at the very moment in time that force was used against him.").

*MacLeod v. Town of Brattleboro*, 548 F. App'x 6 (2d Cir. 2013), and *Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65 (2d Cir. 2018), on which Defendants principally rely, both involved violent subjects who endangered police and others. In *MacLeod*, the Second Circuit held that the defendant reasonably used a taser against an "actively non-compliant suspect reasonably believed to be engaged in dangerous criminal activity and who posed a real and imminent threat to the safety of the officers and any bystanders." *Id.* at *8. The plaintiff had led police "on a high-speed chase through the rainy, 'slick' streets of [a town] in the pre-dawn hours," placing "officers, the passenger, and other motorists and any pedestrians in substantial, immediate danger." *Id.* Similarly, in *Muschette*, the defendant was entitled to qualified immunity for using a taser against a person who posed a "real and imminent threat." *Id.* at 71. Officers responded to a 911 call and found that the plaintiff had "fled his dorm and hunkered down in a restricted construction area, holding a large rock . . . [;] had thrown a folding chair at a staff member, struck [someone] with a stick, and hurled rocks." *Id.* at 70.

Here, "Mr. Harris did not use force against any members of [the] police department at any time during this interaction." Lane Tr. 75:20-24; *accord* Baltzer Tr. 90:7-12. He did not "take any physical steps to assault or injure" any other person on the scene. Jimenez Tr. 80:12-20. Defendants did not believe Mr. Harris was an emotionally disturbed person. Lane Tr. 80:9-13. Defendants did not believe Mr. Harris to be under the influence of drugs or alcohol. Baltzer Tr. 90:15-24. Defendants did not believe Mr. Harris possessed any weapons or dangerous objects. Leon Tr. 50:11-13; Swinkunas Tr. 76:21-77:9. In short, he was not dangerous or violent.

Under clearly established Second Circuit law in *Jones*, Defendants will be liable for using excessive force and will not be entitled to qualified immunity if Mr. Harris was not resisting arrest at the time he was tased.

### II.     There Is a Genuine Dispute of Material Fact as to Whether Mr. Harris Was Resisting Arrest at the Time of the Tasing

Defendants cannot obtain summary judgment because a genuine dispute of material fact exists as to whether Mr. Harris was resisting arrest at the time he was tased.

First, Mr. Harris testified that he did not resist arrest after placing his hands in the air. *E.g.*, Harris Tr. 115:12-20. That testimony creates a dispute of fact.

Second, Leon testified that his decision to order Baltzer to use the taser was not due to any physical resistance by Mr. Harris. Rather, he "made the determination that

the taser was necessary" when "Lane told him to 'put your hands behind your back' [and] he said 'don't touch me.'" Leon Tr. 52:20-53:18.

Third, Defendants' contemporaneous *actions* support an eminently reasonable inference by the jury that Mr. Harris was not resisting arrest at the time the taser was deployed. Defendants simply did not behave the way police officers would have—and typically do—if a subject had been actively resisting arrest right in front of them. Leon had to repeat his order four times before Baltzer drew his, even though Leon would expect an officer to be able to draw his taser in an instant. Leon Tr. 54:15-25. In other words, Baltzer "hesitated." *Id.* 55:12-25. In addition, Leon, Lane, and Jimenez all had tasers on the scene. Swinkunas Tr. 86:9-24. All had the authority to draw and use their tasers of their own accord, but none did. And none of the other officers with tasers took any steps to respond to Leon's taser order. A rational jury could reasonably conclude that the reason Baltzer "hesitated" to use his taser, and no one else tried to use their own, is that Leon unreasonably rushed to order the deployment of a taser under circumstances in which none of the other officers believed it was warranted.

What's more, none of the Defendants gave verbal commands like "stop resisting" or "put your hands behind your back" during the period between Mr. Harris putting his hands in the air and the tasing. *See* BWC Footage. According to Lane, "[i]f Mr. Harris was moving his arms away in the way [Lane] described for several seconds and evading [Lane's] attempt to gain control of him," Lane "would have expected one of the other officers to come to his aid." Lane Tr. 63:17-24; *see also* Baltzer Tr. 78:22-79:2 (would expect fellow officers to assist to overcome active resistance); Leon Tr. 47:4-10 (same). But none of them did. No one did anything to help Lane physically effect the arrest before the taser was deployed. Swinkunas and Jimenez just stood there. Swinkunas Tr. 100:9-18; Jimenez Tr. 65:22-66:17. Leon didn't try to physically assist either. Leon Tr. 84:4-8.

Finally, Defendants gave materially different and irreconcilable accounts of the resistance in which Mr. Harris supposedly engaged after putting his hands in the air and what Mr. Harris was supposedly doing at the time the taser was deployed. According to Swinkunas, Mr. Harris "had his hands in front of his body and was pushing Lieutenant Lane back from him." Swinkunas Tr. 95:21-97:2. When the taser was deployed, Mr. Harris's back was "pushing against the inside . . . panel" of the vehicle's front passenger door. *Id.* at 93:6-18. According to Baltzer, by contrast, Mr. Harris was "leaning towards the door to get inside the vehicle" at the moment of the tasing. Baltzer Tr. 82:8-13.

A rational jury could rely upon all of this evidence—taken apart, and certainly taken together—to find that Mr. Harris was not resisting arrest at the time he was tased. Defendants' motion for summary judgment should therefore be denied.

                Sincerely yours,
                /s/
                Alanna Kaufman
                Douglas E. Lieb

CC.  All counsel of record (by ECF)