Docket No.: 20 Civ. 10864 (LGS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN HARRIS,

                          Plaintiff,

-against-

CITY OF NEW YORK; Lieutenant ANGEL LEON; Detective KRISTEN SWINKUNAS (Shield # 2190); Police Officer ANTONELLA JIMENEZ (Shield # 5209); Police Officer MAXWELL BALTZER (Shield # 15451); and Lieutenant JOHN LANE,

                          Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*HON. SYLVIA O. HINDS-RADIX*

*Corporation Counsel of the City of New York*
   *Attorney for Defendants City of New York,*
   *Leon, Swinkunas, Jimenez, Baltzer, and Lane*
   *100 Church Street*
   *New York, N.Y.  10007*

   *Of Counsel:  Christopher G. Arko*
   *Tel:  (212) 356-5044*
   *Matter No.: 2021-002294*

# **TABLE OF CONTENTS**

                                                                  **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 1

ARGUMENT

      POINT I

           THE USE OF THE TASER WAS REASONABLE .......................................................................... 3

           A. Plaintiff's criminal conduct was serious given the circumstances ................................................. 3

           B. The officers reasonably perceived plaintiff as a threat to their safety ............................................ 3

           C. Plaintiff actively resisted arrest .......................................................................... 6

      POINT II

           DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ........................................................... 8

      POINT III

           THE FAILURE TO INTERVENE CLAIM SHOULD BE DISMISSED ..................................................... 9

      POINT IV

           THE LOST INCOME CLAIM SHOULD BE DISMISSED ..................................................................... 10

      CONCLUSION ............................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Pages**

Amnesty Am. v. Town of W. Hartford,
   361 F.3d 113 (2d Cir. 2004)..................................................................................................6

Brown v. City of New York,
   798 F.3d 94 (2d Cir. 2015)..................................................................................................6, 7

Brown v. City of New York,
   862 F.3d 182 (2d Cir. 2017)......................................................................................................7

Brown v. City of New York,
   No. 13 Civ. 1018 (KBF),
   2016 U.S. Dist. LEXIS 53365 (S.D.N.Y. Apr. 20, 2016).....................................................6, 7

Crowell v. Kirkpatrick,
   400 Fed. Appx. 592 (2d Cir. 2010).....................................................................................6, 7

Garcia v. Dutchess Cnty.,
   43 F. Supp. 3d 281 (S.D.N.Y. 2014)...................................................................................5, 6

Hamell v. City of Utica,
   No. 6:16-CV-0991,
   2019 U.S. Dist. LEXIS 73088 (N.D.N.Y. May 1, 2019)..........................................................6

Hargroves v. City of New York,
   411 Fed. Appx. 378 (2d Cir. 2011).........................................................................................9

Hargroves v. City of New York,
   No. 03 CV 1668 (RRM)(VMS),
   2014 U.S. Dist. LEXIS 41661 (E.D.N.Y. Mar. 26, 2014).......................................................9

Hemphill v. Schott,
   141 F.3d 412 (2d Cir. 1998).....................................................................................................4

Jones v. Treubig,
   963 F.3d 214 (2d Cir. 2020)..................................................................................................7, 8

MacLeod v. Town of Brattleboro,
   548 Fed. Appx. 6 (2d Cir. 2013)...........................................................................................6, 7

Muschette v. Gionfriddo,
   901 F.3d 65 (2d Cir. 2018)....................................................................................................8, 9

**Cases**                                                                                                                                              **Pages**

Rogoz v. City of Hartford,
    796 F.3d 236 (2d Cir. 2015)......................................................................................................8

Scoma v. City of New York,
    No. 16 CV 6693 (KAM)(SJB),
    2021 U.S. Dist. LEXIS 12727 (E.D.N.Y. Jan. 22, 2021) ......................................................6, 7

Tracy v. Freshwater,
    623 F.3d 90 (2d Cir. 2010)........................................................................................................8

Triolo v. Cnty. of Nassau,
    24 F.4th 98, 110 (2d Cir. 2022) ................................................................................................9

Whitfield v. City of Newburgh,
    No. 08 Civ. 8516 (RKE),
    2015 U.S. Dist. LEXIS 169667 at *40 (S.D.N.Y. Dec. 17, 2015).............................................5

**Statutes**

Fed R. Civ. P. 50....................................................................................................................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

BRIAN HARRIS,

            Plaintiff,

      -against-

CITY OF NEW YORK; Lieutenant ANGEL LEON; Detective KRISTEN SWINKUNAS (Shield # 2190); Police Officer ANTONELLA JIMENEZ (Shield # 5209); Police Officer MAXWELL BALTZER (Shield No. 15451); and Lieutenant JOHN LANE,

            Defendants.

20 Civ. 10864 (LGS)

-------------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff does not dispute that he never complied with any of the defendants' commands or said anything to communicate he would submit to arrest. Under Second Circuit authority, he was thus indisputably actively resisting. His effort to downplay the severity of his conduct and portray his interaction with the defendants as a "mundane verbal back-and-forth" highlights the weakness of his position. In reality, he knowingly and intentionally disobeyed the defendants' orders, which were imminently reasonable under the totality of the circumstances, and he should not be permitted to profit from that here. His complaint should be dismissed.

### STATEMENT OF FACTS

Plaintiff fails to identify any disputes of material fact. He does not dispute that he never backed away from the Tahoe but rather continued walking towards it in direct defiance of police orders. Pl. 56.1 Resp. at ¶ 38, 40, 41. He does not dispute that he was warned he would be tased, but still did not move away from the Tahoe, put his hands behind his back, or say he

would submit to arrest. Pl. 56.1 Resp. at ¶ 67-70, 73-77, 80, 81.  He does not dispute that when Lieutenant Lane tried to grab him to arrest him, he raised his arms up, turned towards the open passenger seat of the Tahoe, and said "please don't touch me."  Pl. 56.1 Resp. at ¶ 58, 94.  He thus has no basis to dispute that, at the moment he was tased, he was actively resisting the defendants, and they reasonably believed he was attempting to enter the Tahoe in defiance of their orders.  To dispel any doubt about this, he indisputably admits that he was tased because because he "was going to take the truck." Pl. 56.1 Resp. at ¶ 111.

Plaintiff is truly grasping at straws in his assertion that "there was nothing to indicate to a member of the public that [the Tahoe] was a crime scene" because there was no police tape around it. Pl. 56.1 at ¶ 131, 133.  Five uniformed police officers repeatedly telling him to back away from the car because it was a crime scene was more than sufficient to put him on notice of this fact; indeed, it is undisputed that moments after the tasing he admitted he heard the police say the Tahoe was "a crime scene."  Pl. 56.1 Resp. at ¶ 111.  Plaintiff blatantly misstates the facts when he claims that Lieutenant Leon based his order to use the taser solely on plaintiff's size and statement "don't touch me."  Pl. 56.1 at ¶ 149, 150.  Lieutenant Leon explained in detail that he based his decision on multiple other factors, including that plaintiff was resisting arrest and physically struggling with Lieutenant Lane and it appeared that he was trying to get into the Tahoe.  Ex. G (Leon Dep.) at 78: 16-25; 79: 10-14; 80: 6-9; 87: 22 – 88: 6; 94: 24 – 96:2.  Whether Officer Baltzer hesitated is not material because it is undisputed plaintiff continued actively resisting up to the moment he was tased.  Further, his argument that none of the other defendants quickly came to Lieutenant Lane's aid is belied by the fact that Lieutenant Leon promptly gave the order to deploy a taser, and Officer Baltzer deployed his taser seconds after plaintiff raised his arms over his head.  There was no appreciable delay to substantiate plaintiff's theory that the defendants did not act as if they believed plaintiff was a threat.

# ARGUMENT

## POINT I

### THE USE OF THE TASER WAS REASONABLE

**A.      Plaintiff's criminal conduct was serious given the circumstances**

Plaintiff cites no authority where a court found that attempting to take or interfere with evidence related to a violent felony is a minor offense. There can be no dispute that plaintiff's son had been shot, there was blood visible in the car, and it was being secured as evidence of a serious crime. Pl. 56.1 Resp. at ¶ 21, 22. The law enforcement interest at stake here – maintaining the integrity of the Tahoe so it could be analyzed for evidence to potentially apprehend the person who shot plaintiff's son – was of the utmost importance. Plaintiff does not dispute that he interfered with that interest by repeatedly defying orders to back away from the car. That he did not manage to actually get inside of the Tahoe and drive off does not undermine the fact that he was clearly attempting to do so; indeed, it is undisputed that he admitted he was tased because he "was going to take the truck." Pl. 56.1 Resp. at ¶ 111. His specious argument that any misdemeanor, regardless of the circumstances under which it is committed, constitutes a minor crime is unsupported by the authority he cites and should be rejected by the Court.

**B.      The officers reasonably perceived plaintiff as a threat to their safety**

Unfortunately for plaintiff here, the BWC video lays bare the fact that his conduct and demeanor were objectively hostile, defiant, argumentative, and uncooperative. As the old adage goes, a picture (or, in this case, a video) is worth a thousand words. Viewing the video, no reasonable jury could construe plaintiff's statements – "get away from me," "you cannot tell me what to do with my property," "you already looked inside the car," "I'm not backing away from anything," and "I don't care" if I get arrested – as "mundane verbal back-and-forth." See Pl. Opp. Memo. at p. 2. Contrary to plaintiff's assertion, these statements, combined with his

physical stature and repeated defiance of orders, justified the defendants' concern that he posed a threat.  Plaintiff certainly made it clear that he was not going to comply with the officers' commands no matter how many times they were given, and some level of force would therefore be necessary to get him away from the Tahoe.  It is immaterial that he had not actually punched, kicked, pushed, or injured any officer before he was tased, because the defendants were lawfully permitted to deploy the taser to prevent such a "hands-on" confrontation from coming to fruition.

Further, plaintiff cites no authority that police are required by law (or common sense) to interpret someone raising their hands as a sign of surrender.  The only Circuit case he cites, Hemphill v. Schott, is distinguishable because there plaintiff "stopped and raised his arms in the air *when commanded to do so*."  Hemphill, 141 F.3d 412, 417 (2d Cir. 1998) (emphasis added).  None of the defendants here command plaintiff to put his arms up, and it is undisputed that he never complied with any of the orders he was given.  Pl. 56.1 Resp. at ¶ 38, 40, 41.

Moreover, plaintiff fails in his attempt to discredit Lieutenant Lane's explanation of why he believed plaintiff was about to hit him when plaintiff raised his arms up.  Lieutenant Lane's belief was based on the fact that plaintiff refused numerous orders to back away from the Tahoe, said "you can't tell me what to do with my property," his behavior and demeanor were aggressive, and he did not seem to care when he was told he would be placed under arrest, all of which is undisputed or objectively corroborated by the BWC video.  See Ex. L (Leon BWC #1) at 00:30 – 1:12; Pl. 56.1 Resp. at ¶ 38, 40, 41, 48, 49, 80.  It bears noting that while plaintiff does not dispute that raising his arms was the *only* thing he did to show he was not a threat, Pl. 56.1 Resp. at ¶  65, 78, Lieutenant Lane reasonably reached the opposition conclusion about the gesture.  Plaintiff's opposition also ignores the fact that thirty seconds before Lieutenant Lane reached out to grab him, he raised his hands while saying "please get away from me," Ex. L (Leon BWC #1) 00:27 – 00:32, only to then continue defying the officers' commands, further undermining the alleged conciliatory nature of his gesture.  Plaintiff also does not dispute that

when he raised his arms up as Lieutenant Lane reached out to grab them to place him under arrest, he said "please don't touch me." Def. 56.1 at ¶ 58, 94.  If nothing else, considering plaintiff's conduct, common sense would suggest that this gesture was an attempt to avoid being cuffed and arrested, not to surrender.

Plaintiff's claim that the defendants did not act as if they believed he was a threat is also false.  The fact that the other officers equipped with tasers did not draw them is immaterial.  Officer Jimenez explained that she did not do so owing to her lack of experience, Ex. J (Jimenez Dep.) at 84: 10-12, Lieutenant Lane "did not make a conscious decision to not tase" plaintiff, Ex. H (Lane Dep. at 70: 15-16), and Lieutenant Leon ordered Officer Baltzer to deploy his taser rather than deploying his own.  Further, plaintiff's claim that the other officers didn't think it was necessary to assist Lieutenant Lane is undermined by the fact that Lieutenant Leon instructed Officer Baltzer to tase plaintiff, and Officer Baltzer decided to use his taser, precisely in order to assist Lieutenant Lane overcome plaintiff's active resistance.  There was thus no "conspicuous inaction" on the part of the defendants to assist Lieutenant Lane, nor does anything about their response to plaintiff suggest they believed he was non-threatening.

This case is easily distinguishable from Whitfield v. City of Newburgh, where the court found a dispute of fact as to whether plaintiff posed a threat when he was tased because he was being "bitten repeatedly" by a police dog when the taser was deployed.  Whitfield, No. 08 Civ. 8516 (RKE), 2015 U.S. Dist. LEXIS 169667 at *40 (S.D.N.Y. Dec. 17, 2015).  Similarly, Garcia v. Dutchess Cnty. is distinguishable because in that case there was a dispute as to whether plaintiff posed a threat when he was on the ground with four officers attempting to pull his arms behind his back when he was tased.  Garcia, 43 F. Supp. 3d 281, 287 (S.D.N.Y. 2014).

Finally, plaintiff's assertion that this is the "most important Graham factor" which could "alone warrant[] denial of" summary judgment, Pl. Opp. Mem. At p. 10, is wrong.  "The Fourth Amendment considers the totality of the circumstances and not a single factor is

- 5 -

dispositive." Scoma v. City of New York, No. 16 CV 6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 12727 at *29 (E.D.N.Y. Jan. 22, 2021) (citing Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004). "There are no numerical weights to be assigned" to each factor, and "instead, '[a]ll that can realistically be expected is to make some assessment as to the extent to which each relevant factor is present and then somehow make an aggregate assessment of all the factors.'" Id. (quoting Brown v. City of New York, 798 F.3d 94, 102 (2d Cir. 2015)).

**C.     Plaintiff actively resisted arrest**

Plaintiff almost completely ignores the abundance of authority holding that repeated defiance of police orders constitutes active resistance justifying the use of a taser. His paltry attempt to distinguish MacLeod v. Town of Brattleboro, 548 Fed. Appx. 6 (2d Cir. 2013) and Crowell v. Kirkpatrick, 400 Fed. Appx. 592 (2d Cir. 2010), which he relegates to a foot note, is unconvincing. He also completely fails to address the Second Circuit authority finding officers "could reasonably [] interpret[] previous noncompliance…as indicative of the possibility of further resistance." MacLeod, 58 Fed. Appx. at 7 (quotation marks and citation omitted).

His contention that moving one's arms to avoid being handcuffed amounts to only passive resistance is disingenuous, because that is not the only thing plaintiff did that amounts to active resistance. None of the district court opinions cited by plaintiff involves a scenario where it was undisputed that the arrestee repeatedly defied clear commands given by a police officer, and regardless they do not bind the Court here. Further, in Hamell v. City of Utica, No. 6:16-CV-0991 (GTS/ATB), 2019 U.S. Dist. LEXIS 73088 (N.D.N.Y. May 1, 2019) and Garcia, 43 F. Supp. 3d 281, the plaintiffs were already on the ground when the tasing occurred, which is unlike the situation here. The only Second Circuit opinion plaintiff cites in support of his position, Brown, 798 F.3d 94, does not help him. In its 2015 Brown decision, the Circuit reversed the district court's grant of summary judgment as to plaintiff's excessive force claim, but it did not consider whether qualified immunity applied. Brown, 798 F.3d at 103. On remand, the district

court re-entered summary judgment on the grounds of qualified immunity. Brown v. City of New York, No. 13 Civ. 1018 (KBF), 2016 U.S. Dist. LEXIS 53365 at *1-*2 (S.D.N.Y. Apr. 20, 2016). The Circuit affirmed, finding "no precedential decision of the Supreme Court or this Court 'clearly establishes' that [using pepper spray and other force], viewed in the circumstances in which they were taken, were in violation of the Fourth Amendment," where "those circumstances involved a person's repeatedly refusing to follow the instructions of police officers who were attempting to apply handcuffs to accomplish an arrest." Brown v. City of New York, 862 F.3d 182, 190 (2d Cir. 2017). Since the Circuit's 2017 Brown decision, no Second Circuit or Supreme Court authority has established such a right.

Plaintiff's second line of defense, that his resistance had stopped by the time of the tasing, fails even more readily because he does not dispute that he never backed away from the Tahoe, put his hands behind his back, or said he was relenting before he was tased. See Pl. 56.1 Resp. at ¶ 67, 80, 81. Under Second Circuit precedent, this unequivocally constitutes active resistance. See Scoma, 2021 U.S. Dist. LEXIS 12727 at *26 ("Although neither the Supreme Court nor the Second Circuit has specifically defined 'active resistance,' the Second Circuit has upheld uses of force involving tasers where the suspect was actively non-compliant with the Officers' directions," citing MacLeod, 548 Fed. Appx. at 8 and Crowell, 400 Fed. Appx. at 595). He also does not dispute that the only action he took which in his mind complied with the defendants' commands was to raise his arms up, see Pl. 56.1 Resp. at ¶ 79, which he was never ordered to do and the defendants interpreted as winding up to hit Lieutenant Lane and an effort to evade being handcuffed. Perhaps most importantly, his opposition does not contend the defendants failed to warn him he would be tased, yet he nevertheless continued his refusal to move away from the Tahoe. It is thus easy to distinguish Jones v. Treubig, 963 F.3d 214, 229 (2d Cir. 2020) (disputed whether plaintiff was "already 'subdued face down, arms spread'" at the time of the tasing), Tracy v. Freshwater, 623 F.3d 90, 98 (2d Cir. 2010) (disputed whether

plaintiff was already in handcuffs when pepper spray was deployed), and Rogoz v. City of Hartford, 796 F.3d 236, 241 (2d Cir. 2015) (not disputed that plaintiff "complied with each of the officers' commands," "did not resist in any way," and "was lying face down on the ground, with his hands behind his back waiting to be handcuffed when [an officer] jumped on his back" breaking his ribs and spine). Simply put, and to use plaintiff's verbiage, in light of the undisputed facts no rational jury could find it was *un*reasonable to believe plaintiff was actively resisting up until the moment he was tased and the force claim should therefore be dismissed.

## POINT II

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The only authority plaintiff proffers in support of his opposition to qualified immunity is patently distinguishable. In Jones, there was a dispute as to whether plaintiff was actively resisting at the time of the taser discharge at issue, with plaintiff contending he was "already 'subdued face down, arms spread'" on the ground at that time. Jones, 963 F.3d at 229. As demonstrated above, plaintiff here does not dispute that he continued defying orders up to the moment he was tased, and he pointedly does not claim he wasn't warned he would be tased. Therefore Jones is relevant only to the extent it found that "there [is] no clearly established law that would fairly warn police officers that a taser could not be used against a resisting arrestee. Indeed, to the contrary, our precedent suggests it is *not* excessive force to deploy tasers, after a warning, against arrestees who are dangerous *or* resisting arrest." Id. at 228 (quotation marks and citation omitted; first emphasis in original). Plaintiff's effort to distinguish Muschette v. Gionfriddo also misses the mark. Just as plaintiff here was tased after he had defied numerous orders to back away from the Tahoe, in Muschette the defendant was entitled to qualified immunity because "it was only…when it appeared to [defendant] that [plaintiff] was ignoring his instructions…that [defendant] deployed the taser." Muschette, 901 F.3d 65, 70 (2d Cir. 2018).

Further, were the Court to grant qualified immunity, plaintiff's *respondeat superior* claims should be dismissed under Hargroves v. City of New York, 411 Fed. Appx. 378 (2d Cir. 2011). In Hargroves, a summary judgment decision, the Circuit reasoned "Plaintiffs' false arrest claims [] turn on whether the officers'…probable cause determination was at least objectively reasonable," meaning "there was 'arguable' probable cause at the time of arrest—that is, if officers of reasonable competence could disagree on whether the probable cause test was met." Id. at 382 (quotation marks and citation omitted). The Court found that the officers had acted objectively reasonably, i.e. there was arguable probable cause, and ordered "Judgment for defendants shall enter on the basis of qualified immunity on all of plaintiffs' claims," id. at 386, which included *respondeat superior* claims. The same reasoning would apply here if the Court were to find that officers of reasonable competence could disagree on whether using the taser was lawful. In Triolo v. Cnty. of Nassau, a Rule 50 decision following a plaintiff's verdict on false arrest, the Circuit distinguished Hargroves on the grounds that there "the court dismissed vicarious liability claims against the city because it found the officers acted objectively reasonably and thus there was 'no underlying offense for which the City could be held vicariously liable.'" Triolo, 24 F.4th 98, 110 (2d Cir. 2022) (quoting Hargroves v. City of New York, No. 03 CV 1668 (RRM)(VMS), 2014 U.S. Dist. LEXIS 41661 at *12 (E.D.N.Y. Mar. 26, 2014)). Similarly here, should the Court find that officers of reasonable competence could disagree as to whether the tasing was lawful, there would be no underlying offense for which the City could be liable and the *respondeat superior* claims should be dismissed.

## POINT III

### THE FAILURE TO INTERVENE CLAIM SHOULD BE DISMISSED

As an initial matter, only about four and a half seconds elapse between the point when Lieutenant Leon first said "get your taser" and the point when plaintiff was tased. Ex. L

- 9 -

(Leon BWC #1) at 1:07 – 1:12. During that time, Lieutenant Lane was preoccupied trying to grab ahold of plaintiff's arms, and Officer Jimenez barely had time to take one step forward towards Lieutenant Lane. Ex. J (Jimenez Dep.) at 65: 7 – 66: 10. There was thus no opportunity to intervene in such a fleeting interlude. Regardless, plaintiff fails to address the fact that no reasonable officer would have had any reason to believe that plaintiff's rights were violated when he was tased, so there would be no duty to intervene to prevent it.

## POINT IV

### THE LOST INCOME CLAIM SHOULD BE DISMISSED

Contrary to plaintiff's assertions, he did not produce tax returns either in discovery or in support of his opposition to substantiate his lost income claim. His Exhibits R, S, and T only go to show that he was not paid overtime or differentials with any degree of regularity. For instance, during the pay period 11/1/2020 to 11/7/2020, before he was on sick leave, he was paid $1,646.39, only $40 more than the $1606.23 he earned for the periods 11/22/2020 to 11/28/2020 and 12/6/2020 through 12/26/2020 when he was on sick leave. Ex. R at PL106 – PL107. In total, prior to going on sick leave in 2020, he earned between $1,511.74 and $1,646.39 on nine pay weeks (1/17/2020, 1/31/2020, 2/7/2020, 3/13/2020, 3/27/2020, 5/1/2020, 5/29/2020, 6/5/2020, and 10/2/2020), substantially less than the nearly $2,200 or more a week he contends he is entitled to in damages. Ex. S at PL110 – PL111. In 2019, he was paid less than $1,800 on 22 pay weeks, covering nearly half of the year. Ex. S at PL108 – PL109. All of this belies his claim that he "regularly made hundreds of dollars per pay period in overtime and differential pay that he missed out on while on leave" and that he "routinely worked weekends and holidays when at full health." Pl. Opp. Memo. at p. 24, 25. In reality, his pay fluctuated substantially from week to week and there is no evidence supporting his claim that he would have earned anything, let alone a specific amount of money, beyond his base pay.

## **CONCLUSION**

Plaintiff cannot escape the fact that he refused to obey every single command the defendants gave him. He does not even attempt to argue he wasn't warned he would be tased, yet he never changed course. Even viewing the undisputed facts in the light most favorable to plaintiff, no reasonable jury could find in his favor. For the foregoing reasons, defendants respectfully request that the Court grant their motion for summary judgment, together with such other and further relief as this Court may deem just and proper.

Dated:      New York, NY
            April 7, 2022

                                    **HON. SYLVIA O. HINDS-RADIX**
                                    Corporation Counsel of the City of New York
                                    *Attorney for Defendants City of New York, Lane,*
                                    *Swinkunas, Jimenez, Baltzer, and Leon*
                                    100 Church Street, Room 3-200
                                    New York, New York 10007
                                    (212) 356-5044

                            By:     /s/ *Christopher G. Arko*
                                    Christopher G. Arko
                                    Senior Counsel
                                    Special Federal Litigation Division

cc:     Doug Lieb, Esq. (by ECF)
        Alanna Kaufman, Esq. (by ECF)
        *Attorneys for plaintiff*