```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRIAN HARRIS,                                   :
                              Plaintiff,        :
                                                :              20 Civ. 10864 (LGS)
            -against-                           :
                                                :              OPINION AND ORDER
                                                :
ANGEL LEON, et al.,                             :
                              Defendants.       :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Brian Harris brings this action against five New York City Police Department employees, Lieutenants Angel Leon and John Lane, Detective Kristen Swinkunas and Officers Antonella Jimenez and Maxwell Baltzer (collectively, the "Individual Defendants"), and the City of New York (the "City"). The case arises out of Defendant Baltzer's use of a taser against Plaintiff on September 2, 2020. Plaintiff brings claims for excessive force against the Individual Defendants and common law assault and battery against the City. Defendants move for summary judgment on all claims. For the reasons given below, the motion is granted in part and denied in part.

I.   BACKGROUND

The following facts are drawn from the parties' Rule 56.1 statements and other documents submitted in connection with this motion, in particular a video recorded by Defendant Leon's body-worn camera depicting the incident (the "Video"). The facts are undisputed unless otherwise noted. As Plaintiff is the non-moving party, the evidence is construed in the light most favorable to him, and all reasonable inferences are drawn in his favor. *See Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021).

In the early morning of September 2, 2020, the Individual Defendants received a radio call regarding a shooting. The Individual Defendants went to Mt. Sinai Morningside Hospital in Manhattan to respond to the report. There they found a blue Chevy Tahoe parked in front of the emergency room, with blood visible on the passenger's seat. They suspected the Tahoe was involved in the shooting.

Plaintiff, who co-owns the Tahoe with his wife Joy Harris, arrived at the hospital and approached the officers. Plaintiff is six feet, two inches tall and weighed approximately 280 pounds the night of the incident. None of the Individual Defendants is over five feet, eight inches tall. Plaintiff informed the Individual Defendants that he was the owner of the vehicle and that his son had been shot. The Individual Defendants told him to move away from the vehicle. Plaintiff repeated that he owned the vehicle and that his son had been shot, and did not comply with the instructions to back away from the car.

Defendant Leon informed Plaintiff that the car was a crime scene and instructed him not to touch the car. Plaintiff answered that the vehicle was his property. Several officers repeated the instruction not to touch the car, and Defendant Lane told Plaintiff that he was "going to be under arrest." Plaintiff responded by repeatedly stating that he did not care and asking the police officers to "please get away from [him]." Plaintiff stated that the Individual Defendants had already looked inside the car. Defendant Leon responded that they had not. Defendant Lane again instructed Plaintiff to step away from the car. Plaintiff refused, saying "I'm not stepping away from anything." Defendant Lane then said "turn around" and attempted to grab Plaintiff's hands. In response, Plaintiff moved both of his hands away from Lane and said "please don't touch me." Defendant Leon then said "get your taser" four times and "taser him" to Defendant

Baltzer. Defendant Leon then said "taser, taser, taser." In response, Defendant Baltzer deployed his taser against Plaintiff, who fell to the ground while screaming in pain.

After he was tased, Plaintiff was placed in handcuffs. He was taken to a hospital, where the taser prongs were removed and his skin was stitched. He was then arrested for resisting arrest and obstructing governmental administration, and transported to the 26th Precinct. He was released with a desk appearance ticket.

## II.     STANDARD

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Electra v. 59 Murray Enters.*, 987 F.3d 233, 248 (2d Cir. 2021). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017). Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor. *Electra*, 987 F.3d at 248. When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A).

### III. DISCUSSION

#### A. Excessive Force Claim

##### 1. Defendant Baltzer

Defendants move for summary judgment on Plaintiff's claim of excessive force against the Individual Defendants, a constitutional claim under 42 U.S.C. § 1983. "A police officer violates the Fourth Amendment if the amount of force he uses in effectuating an arrest is 'objectively [un]reasonable' in light of the facts and circumstances confronting the officer." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (internal quotation marks omitted); *accord Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) ("*Brown I*"). "A determination of whether the force used was reasonable 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Lennox*, 968 F.3d at 155 (quoting *Graham v. Connor*, 490 U.S. at 396). "A court's role in considering [motions for summary judgment on] excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Brown I*, 798 F.3d at 103. Summary judgment is denied because a reasonable jury could find two of the three enumerated *Graham* factors favor Plaintiff and, based on the totality of circumstances, find in his favor on his excessive force claim.

The first factor -- the severity of the crime at issue -- favors Plaintiff. Plaintiff was not engaged in, nor had he engaged in, any criminal activity until he attempted to approach his own car, contrary to the officers' directives. After he was tased, Plaintiff was arrested for obstruction

of governmental administration and for resisting arrest. These are misdemeanors under New York law. *See* N.Y. Penal Law §§ 195.05, 205.30. Misdemeanors are treated as non-serious crimes for purposes of the *Graham* analysis. *See Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150 (2d Cir. 2021) (finding the first *Graham* factor favored plaintiff because "the offense was a misdemeanor"); *see also Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 723 (S.D.N.Y. 2015) ("Obstruction of Governmental Administration . . . and Resisting Arrest[] are not severe."). Defendants' argument that the relevant criminal activity is the shooting in which Plaintiff was not involved, rather than Plaintiff's own conduct, is unpersuasive and unsupported by any citation to case law. Because the officers used force to arrest Plaintiff for non-serious crimes, the first *Graham* factor weighs in Plaintiff's favor.

The second factor -- whether Plaintiff posed an immediate threat at the time the officer deployed force -- also favors Plaintiff. While speaking with the Individual Defendants, Plaintiff raised his hands above his head, a gesture that, in context, indicated that he was not a threat to the officers. The Video corroborates Plaintiff's other evidence that he did not use force at any time and did not physically threaten the Individual Defendants. Individual Defendants testified that they were not concerned that Plaintiff had a weapon or dangerous object. The parties agree that Plaintiff was noncompliant with Defendants' instructions, but noncompliance alone does not create a threat to safety. *See Brown I*, 798 F.3d at 102 ("At most, [plaintiff's] 'resistance' was a refusal to permit the easy application of handcuffs by placing her hands behind her back[,]" and she "posed no threat whatever to the safety of the officers or others"). Although Defendant disputes this issue, a reasonable jury could find that Plaintiff posed no threat when the taser was deployed.

The third factor -- whether the suspect is actively resisting arrest or attempting to evade arrest by flight -- weighs against Plaintiff because, based on the Video, no reasonable jury could fail to conclude that Plaintiff was resisting arrest at the time force was deployed. For purposes of the excessive force analysis, resisting arrest can include passive resistance or non-compliance. *See Brown I*, 798 F.3d at 103 ("[E]ven if Brown's unwillingness, while standing, to offer her hands for handcuffing . . . is found to be resisting arrest, that non-threatening form of resistance would be only one factor . . . ."); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (holding officers violated the law when they used force including throwing a plaintiff to the ground and ramming the head of another into a wall in response to "resistance to arrest [that] was purely passive"). The Video clearly shows Plaintiff resisting arrest by defying Defendants' instruction to step away from the car, stating that he did not care if he was arrested and finally, moving his arm away from Defendants when they approached him to effectuate the arrest. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (holding that summary judgment should have been granted to defendant on an excessive force claim based on video evidence, even though it contradicted evidence offered by the plaintiff); *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022) (stating that a party's declaration does not create a material issue of fact when contradicted by the record, "as when a plaintiff's declaration statements are directly refuted by undisputed video evidence").

The enumerated *Graham* factors are not exhaustive. Another factor in Plaintiff's favor that courts often cite is whether the plaintiff was warned that a taser would be used if he or she did not comply with the officer's directive. *See, e.g., MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 8 (2d Cir. 2013) (summary order) (affirming the use of "a Taser, once, to subdue an

actively non-compliant suspect reasonably believed to be engaged in dangerous criminal activity and who posed a real and imminent threat to the safety of the officers and any bystanders" after "repeated, clear commands that [the plaintiff] return to the ground"); *Crowell v. Kirkpatrick*, 400 F. App'x 592, 595 (2d Cir. 2010) (summary order) (affirming use of a taser against plaintiffs, protestors who chained themselves to an object on private property, after the officers attempted to remove them and expressly warned that they would be tased).  The rationale presumably is that the severity of the allegedly excessive force is mitigated by providing a plaintiff the opportunity to avoid its use by complying with the officers' demands.  Plaintiff does not dispute Defendants' assertion that Defendant Leon's statement to Defendant Baltzer, "taser, taser, taser," was a warning.  Defendants cite Plaintiff's deposition testimony that he understood from the statement that he might be tased and "knew it was serious."  Even though he understood the warning, the Video confirms that Plaintiff did not move away from the vehicle.

   Weighing the *Graham* factors "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.  Defendants had a reasonable need to stop Plaintiff's approach to a vehicle that was possibly evidence in a shooting investigation, and arrest him if necessary to accomplish that.  But interpreting the evidence in the light most favorable to Plaintiff, a reasonable jury could find that, despite Plaintiff's continuing to approach his vehicle and resisting arrest, he posed no threat to any officer and that the use of the taser, even after a warning, was objectively unreasonable to accomplish the officers' reasonable need to stop Plaintiff.  *See Brown I*, 798 F.3d at 102 ("[Notwithstanding plaintiff's resistance,] [a]n aggregate assessment of all three relevant *Graham* factors would seem to point toward a determination of excessive force and, at a minimum, to preclude a ruling against the victim on a motion for

summary judgment."); *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit.").

    Defendants imply that it is not excessive force as a matter of law -- i.e., that it is always objectively reasonable -- to use a taser after a warning against a resisting arrestee in order to accomplish the arrest, regardless of whether the arrestee is a threat or was dangerous. The case law does not support that proposition. The only reported case Defendants cite in support is *Jones v. Treubig*, 963 F.3d 214 (2d Cir. 2020). In *Jones*, the Second Circuit was considering qualified immunity, not whether the defendant officer who used a taser had committed a Fourth Amendment violation. *Id.* at 219. The Court held that the defendant was not entitled to qualified immunity because his conduct violated clearly established law "that a police officer cannot use significant force, such as a taser, against an individual *who is no longer resisting* or posing a threat . . . ." *Id*. at 240 (emphasis added). *Jones* is thus both analytically and factually distinct from this case. Defendants quote the statement from *Jones* that "'[o]ur precedents suggest that it is *not* excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest.'" *Id.* at 228 (quoting *Penree by Penree v. City of Utica, New York*, 694 F. App'x 30, 33 (2d Cir. 2017) (summary order)). But that was not a statement of a constitutional rule, rather a part of the Court's explanation that qualified immunity in that case turned on whether the plaintiff was resisting arrest. *Id*. The holding of *Jones* does not support granting Defendants summary judgment.

The Court in *Jones* then cited three unreported, non-precedential cases, which Defendants also cite. None of them stand for the proposition that using a taser in the circumstances of this case is a constitutional use of force, warranting summary judgment for Defendants. The first case, *Penree*, is inapt because it, too, is analytically and factually distinguishable; it is a qualified immunity case, and it affirmed the denial of qualified immunity on an excessive force claim, holding that "Defendants violated clearly established law prohibiting the use of tasers, without warning, against nonviolent, non-fleeing, *non-resisting arrestees* who have committed no criminal offenses . . . ." 694 F. App'x at 34 (emphasis added). In the second case, *MacLeod*, 548 F. App'x at 8, the Second Circuit affirmed the grant of summary judgment for the defendant in a case also factually distinct from this case; "Officer Emery used a Taser, once, to subdue an actively non-compliant suspect reasonably believed to be engaged in dangerous criminal activity and who posed a real and imminent threat to the safety of the officers and any bystanders." *Id*. Finally, in *Crowell*, 400 F. App'x at 595, the Second Circuit affirmed summary judgment for defendants finding that the use of a taser was not a constitutional violation where the plaintiffs were protesters resisting arrest, had chained themselves to a large barrel drum, had called for imminent reinforcements that would have made removal more difficult, and where the officers had considered and attempted other ways to remove plaintiffs from the property and warned the plaintiffs they would be tased if they did not release themselves. *Id*.

Each of these three cases is factually distinct from the instant case. An excessive force claim must be analyzed "with sensitivity to the factual circumstances of each case." *MacLeod*, 548 F. App'x at 7 (quoting *Graham* factors). Neither these cases, nor the others Defendants cite, disturbs the conclusion that it is for the jury to decide whether Defendants' conduct in this case

was "objectively unreasonable" in light of the circumstances. Defendants' motion for summary judgment on the ground that the force used was not excessive as a matter of law is denied.

### 2. Defendants Leon, Lane, Swinkunas and Jimenez

Defendants argue that Defendants Leon, Lane, Swinkunas and Jimenez should be granted summary judgment because they were not personally involved in tasing Plaintiff. The motion is denied as to Leon because the evidence is undisputed that he ordered Baltzer to tase Plaintiff. The motion is granted as to Lane, Swinkunas and Jimenez as explained below.

Plaintiff states his theory of liability against them for the first time on this motion in a footnote: "[Plaintiff] seeks to proceed against Defendants Lane, Swinkunas and Jimenez only on a failure to intervene theory and does not contend that they personally used excessive force." Later in the text of his memorandum of law, he inserts a full-blown argument that whether Lane, Swinkunas and Jimenez had time to intervene raises an issue of fact that precludes summary judgment. This argument fails for several reasons. First, the pleading against them is deficient. The operative Complaint contains no allegations of wrongdoing specifically about any of them individually. It merely groups together all of the "Individual Defendants" (including Baltzer) and alleges that they "used or caused to be used objectively unreasonable force against Plaintiff and/or failed to intervene to prevent the use of such force . . . ." These allegations fail the minimal pleading requirement, which "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy th[e] minimum standard [under Fed. R. Civ. P.

8]."). Second, no reasonable jury could find that Lane, Swinkunas and Jimenez had any opportunity to intervene. The Video shows that approximately four and a half seconds elapsed between Leon's instruction to "get your taser" and the moment Plaintiff was tased. During that time, Lane was trying to grab ahold of Plaintiff's arms and Plaintiff continued to be non-compliant. Summary judgment is granted to Lane, Swinkunas and Jimenez.

### 3. Qualified Immunity

Despite a viable excessive force claim against them, Baltzer and Leon are granted summary judgment due to qualified immunity. (Qualified immunity provides an alternative ground to grant summary judgment to Defendants Lane, Swinkunas and Jimenez).

> The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known. When a defendant moves for summary judgment based on qualified immunity, courts consider whether the facts shown make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct. If the constitutional right invoked by the plaintiff was not clearly established at the time of the purported violation, qualified immunity precludes civil liability and the defendant is entitled to summary judgment.

*McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (internal quotation marks, brackets, and citations omitted). Even though the evidence may be sufficient to prove a Fourth Amendment violation, qualified immunity will relieve a defendant of liability. *Compare, e.g., Brown I*, 798 F.3d at 103-04 (holding that a reasonable jury could find that defendants used excessive force against a non-compliant arrestee), *with Brown v. City of New York,* 862 F.3d 182, 183 (2d Cir. 2017) ("*Brown II*") (finding the same defendants entitled to qualified immunity).

"Courts are cautioned not to define clearly established law at a high level of generality, and police officers are entitled to qualified immunity unless existing precedent squarely governs

the specific facts at issue. That is not to say that there must be a case directly on point for a right to be clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate." *Lennox*, 968 F.3d at 156-57 (cleaned up).

To determine qualified immunity on a motion for summary judgment, the facts are construed, and all reasonable inferences are drawn, in favor of Plaintiff as the non-moving party. *See Brown II*, 862 F.3d at 189. The relevant facts are: Defendants used a taser to effectuate Plaintiff's arrest and stop him from approaching his vehicle, which was suspected to be evidence in a shooting investigation. When the taser was deployed, Plaintiff was resisting arrest and ignoring officer instructions. Plaintiff was not physically threatening or violent, and had been warned about the imminent use of the taser.

Defendants are entitled to summary judgment under the doctrine of qualified immunity because, in September 2020 when the arrest occurred, neither the Supreme Court nor the Second Circuit had clearly established that a police officer may not use a taser on a person who is resisting arrest, but is not violent or threatening.

*Brown II* dictates this result. In *Brown II* the Second Circuit held that it was not clearly established, as of November 15, 2011, that it was unconstitutional as a matter of law for the police repeatedly to use pepper spray and force the plaintiff to the ground in order to effectuate her arrest after she repeatedly refused to follow instructions of police officers who were trying to arrest her. *Brown II*, 862 F.3d at 190. The facts of that case are analogous to this case because the officers used significant force after a warning, on a plaintiff who was resisting arrest and not following instructions, but was not violent or threatening. *Brown I* and *Brown II* did not themselves clearly establish that the use of significant force against a non-compliant but non-

threatening arrestee amounts to constitutionally excessive force. *Brown I* merely found that a reasonable jury could find excessive force. 798 F.3d at 103-04. *Brown II* held that the police conduct under the circumstances was not clearly established to be excessive force as a matter of law. 862 F.3d at 190.

Plaintiff identifies no binding decision between November 2011, when the incident in *Brown II* occurred, and September 2020, when the incident in the instant case occurred, that clearly establishes that an officer may not use of a taser or comparable force against an arrestee who is non-compliant but is not threatening. Below is a review of Second Circuit precedent addressing qualified immunity and clearly established law for the use of a taser since *Brown II*. Each of these cases is inapplicable to the facts and circumstances here.

In *Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65 (2d Cir. 2018), the Second Circuit held that, as of April 2013, "It is clearly established that officers may not use a taser against a compliant or non-threatening suspect." *Id*. at 69. The use of the word "or" implies that it was clearly established that officers may not use a taser against a non-threatening suspect, like Plaintiff here, even if he was not compliant. But the holding, based on the facts of the case, does not reach that issue. The Court in *Muschette* found that the officer had a reasonable basis to believe that the plaintiff was non-compliant *and* posed a threat. *See id*. at 70. Based on these facts, the Court held that the defendant officer was entitled to qualified immunity. *Id*. at 72. *Muschette* does not address an arrestee, like the Plaintiff here, who is non-compliant but is not threatening.

In *Jones*, 963 F.3d at 225, the Second Circuit stated that "in April 2015, it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use

13

significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others." The Court reversed the Court's grant of qualified immunity after a jury verdict on Plaintiff's claim of excessive force in the use of a taser twice during the plaintiff's arrest. *Id*. at 228, 240. The Second Circuit held that, construing the evidence in favor of the plaintiff, he not only was no longer resisting arrest as the jury found, but that "he was face down on the ground with his arms spread." *Id*. at 230. *Jones* does not address an arrestee, like the Plaintiff here who is not threatening but is unrestrained and not compliant.

Finally, in *Lennox*, 968 F.3d at 157, the Second Circuit held that "[o]n July 22, 2016, it was . . . clearly established by our Circuit caselaw that it is impermissible to use significant force against a restrained arrestee who is not actively resisting." *Lennox,* like *Jones*, does not address the use of force against an unrestrained arrestee, like the Plaintiff here, who was resisting arrest.

*Brown II* appears to be the most recent relevant inquiry into clearly established law. In the absence of any later case to the contrary, *Brown II* requires the conclusion that there is no clearly established law that the use of significant force against a non-compliant but non-threatening arrestee amounts to constitutionally excessive force. The Individual Defendants are entitled to qualified immunity.

**B.     State Law Claims Against Defendant City of New York**

The claims against the City survive Defendants' motion for summary judgment, notwithstanding the application of qualified immunity. "Under the common-law doctrine of respondeat superior, an employer—including the State—may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment[.]" *Rivera v. State*, 142 N.E.3d 641, 645 (N.Y. 2019). "[A] municipal employer is

14

vicariously liable for the wrongs of its employee, even when the employee is individually immune, so long as the wrong was committed within the scope of employment." *Triolo v. Nassau County*, 24 F.4th 98, 110 (2d Cir. 2022) (holding that, under New York law, the County could be liable be vicariously liable for the acts of an employee who was entitled to individual immunity); *see also id.* at 110 n.8 (finding that the requirement of a municipal policy or custom under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), does not apply when "a municipal employer [is] held vicariously liable for its employee's wrongs under New York law").

Defendants argue that *Triolo* is not controlling because that case followed a jury verdict in favor of the plaintiff. 28 F.4th at 102. The argument is unpersuasive. In *Triolo*, the District court entered post-trial judgment for both the individual defendant and his municipal employer based on qualified immunity. *Id.* The Second Circuit reversed as to the municipal defendant on both the federal and state claims. *Id*. at 113. Regarding the state claim, which is relevant here, the Second Circuit reasoned: "First, qualified immunity is an individual affirmative defense that does not protect municipalities. Second, under New York law and basic agency principles, a municipal employer is vicariously liable for the wrongs of its employee, even when the employee is individually immune, so long as the wrong was committed within the scope of employment." *Id.* at 110. Defendants articulate no reason why this rationale does not apply here. Defendants' reliance on *Hargroves v. City of New York*, 411 F. App'x 378 (2d Cir. 2011) (summary order), is misplaced because it is a summary order without binding effect. The *Triolo* majority opinion implicitly acknowledges the decision made new law. *See* 24 F.4th at 111 (analogizing to spousal privileges and looking to the Restatement (Second) of Agency); *see also id.* at 114 (Lohier, J., concurring) (referring to municipal liability in such circumstances as an

15

"open question of New York law"). *Triolo* provides recent, binding authority on the question of Defendant City of New York's potential liability, and requires that summary judgment be denied as to the City.

The claims against the City, which are New York common law claims, are not dismissed on jurisdictional grounds. The Court has supplemental jurisdiction over these claims ancillary to federal subject matter jurisdiction over the federal claims. As discussed above, the federal claims are dismissed due to qualified immunity. When a court "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c), "the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018). "[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values [of] economy, convenience, fairness, and comity." *Id.* (internal quotation marks omitted). The Court, in its discretion, will continue to exercise supplemental jurisdiction over the claims against the City, because factual discovery (save depositions of treating physicians) is complete, the legal issues are relatively straightforward, and efficiency favors retaining jurisdiction.

### C.     Lost Wages

Defendants move for summary judgment that Plaintiff is not entitled to damages for lost overtime pay. This relief is denied. Lost earnings are recoverable if they can be proven with reasonable certainty. *See Wu v. 34 17th St. Project LLC*, 155 N.Y.S.3d 85, 86 (1st Dep't 2021) (affirming order denying motion to bar evidence of past and future lost wages, "since defendants failed to establish that plaintiff would be unable to prove lost earnings with reasonable

certainty"); *Gore v. Cardany*, 90 N.Y.S.3d 144, 146 (2d Dep't 2018) ("[W]e agree with the Supreme Court's determination that the plaintiff failed to meet his burden of establishing damages for future lost earnings with reasonable certainty.").

Defendants argue this Plaintiff's proof of lost overtime pay is too speculative. However, Plaintiff has proffered evidence from which a reasonable jury could award him damages for lost overtime wages, including pay summary sheets showing that he was consistently paid overtime in the periods before and after the leave connected to the incident at issue in this case. He has also provided sworn testimony that he missed out on overtime pay that he usually receives, which, standing alone, can support a damage award. *See Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492, 503 (S.D.N.Y. 2013) ("Damages for loss of past earnings may be awarded based solely on plaintiff's testimony without supporting documentation." (internal quotation marks omitted)). A reasonable jury could award Plaintiff damages for these lost wages. Defendant's motion for summary judgment with respect to Plaintiff's claim for lost overtime is denied.

\* \* \*

For the reasons given above, Defendants' motion for summary judgment is granted in part and denied in part. The Clerk of Court is respectfully directed to close the motion at Dkt. 57.

Dated: February 16, 2023
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE