UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN HARRIS,

                Plaintiff,

   -against-

CITY OF NEW YORK,

                Defendant.

No. 20 Civ. 10865

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTIONS IN LIMINE**

Kaufman Lieb Lebowitz & Frick LLP
18 E. 48th Street, Suite 802
New York, New York 10017
(212) 660-2332

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................. ii

**ARGUMENT** ................................................................................................................................ 1

    I.    Plaintiff Should Be Permitted to Offer Evidence Concerning the Patrol Guide .............. 1

    II.    Plaintiff Should Be Permitted to Testify Concerning His Injuries and Their Cause ....... 3

        A.    Plaintiff Should Be Permitted to Testify About His Diagnosis .................................. 4

        B.    Plaintiff Should Be Permitted to Testify About the Cause of His Injuries.................. 6

    III.    Dr. Rosenbaum Should Be Permitted to Testify............................................................. 9

    IV.    Liability and Damages Should Not Be Bifurcated ........................................................10

    V.    The Court Should Not Instruct the Jury That Plaintiff's Arrest Was Lawful ................ 13

    VI.    Plaintiff Does Not Intend to Argue or Elicit Testimony About Other Instances of Unrelated Police Actions, But Should Not Be Precluded From Using Specific Words or Phrases............................................................................................................................14

    VII.    Plaintiff Should Be Permitted To Suggest a Dollar Amount For Damages to the Jury . 14

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. Anderson*, 202 F.2d 150 (2d Cir. 1999) ............................................................. 7

*Brown v. City of New York*, 780 F.3d 94 (2d Cir. 2015) ..................................................... 1

*Buczakowski v. Crouse Health Hosp., Inc.*,
   No. 18 Civ. 330, 2022 WL 168902 (N.D.N.Y. Jan. 22, 2022) .................................. 9, 10

*Byfield v. Chapman*, 141 F. Supp. 3d 221 (W.D.N.Y. 2015) .......................................... 6, 8

*Collado v. City of New York*,
   No. 11 Civ. 9041, 2017 WL 4533772 (S.D.N.Y. Sept. 27, 2017) .............................. 11, 15

*Dunham v. Lobello*, No. 11 Civ 1223, 2023 WL 3004623 (S.D.N.Y. Apr. 19, 2023) ........ 15

*Gogol v. City of New York*,
   No. 15 Civ. 5703, 2018 WL 4616047, at *5 (S.D.N.Y. Sept. 26, 2018) ................. 1, 3, 14

*Gyllenhammer v. Am. Nat'l Red Cross*,
   No. 15 Civ. 1143, 2017 WL 11295795 (N.D.N.Y. Nov. 16, 2017) .................................. 7, 8

*Kerman v. City of New York*,
   No. 96 Civ. 1764, 1997 WL 666261 (S.D.N.Y. Oct. 24, 1997) ........................................ 11

*Kokoska v. City of Hartford*,
   No. 12 Civ. 1111, 2014 WL 4724879 (D. Conn. Sept. 23, 2014) ...................................... 5

*Lewis v. City of New York*, 689 F. Supp. 2d 417 (E.D.N.Y. 2010) ................................... 13

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898 (2d Cir. 1997) ...................................... 15

*Martinez v. City of New York*,
   No. 16 Civ. 79, 2022 WL 17090267 (E.D.N.Y. Nov. 18, 2022) ........................................ 3

*Mercado v. Dep't of Corrections*,
   No. 16 Civ. 1622, 2019 WL 625697 (D. Conn. Feb. 14, 2019) ................................... 4, 10

*McLeod v. Llano*, No. 17 Civ. 6062, 2021 WL 1669732 (E.D.N.Y. Apr. 28, 2021) ....... 1, 14

*Mensler v. Wal–Mart Transp., LLC*, 2015 WL 7573236 (S.D.N.Y. Nov. 24, 2015) ... 12, 13

*Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410 (W.D.N.Y. 2017) ..................... 12

*Newton v. City of New York*, 171 F.Supp.3d 156 (S.D.N.Y. 2016) ..................................... 15

*Rodriguez v. Robinson*, 2019 WL 5865115 (S.D.N.Y. Nov. 8, 2019) .................................. 9

*Ross v. Guy*, No. 18 Civ. 1340, 2022 WL 768196 (Mar. 14, 2022) ..................................... 2

*Scoma v. City of New York*,
    No. 16 Civ. 6693, 2021 WL 1784385 (E.D.N.Y. May 4, 2021) ....................................... 15

*Smith v. City of New York*,
    No. 12 Civ. 4922, 2015 WL 4643125 (S.D.N.Y. Aug. 4, 2015) ....................................... 2

*Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283 (D. Conn. 2004) ................ 12

*Tardif v. City of N.Y.*, No. 13 Civ. 4056, 2017 WL 3634612 (S.D.N.Y. Aug. 23, 2017) ...... 2

*Ulfik v. Metro N. Commuter R.R.*, 77 F.3d 54 (2d Cir. 1996) ........................................ 6, 9

*Vogel v. Riverhead County Jail*, 2012 WL 1450560 (E.D.N.Y. Apr. 19, 2012) .................. 5

*Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004) ................................................ 7

**ARGUMENT**

Plaintiff submits this response to Defendant's motions in limine. Plaintiff does not oppose Defendant's motions to preclude Plaintiff from commenting on why the individual officers are not Defendants (Point I)—with the caveat that Defendant should be similarly precluded from suggesting that the court found that the individual officers had not committed a constitution violation or otherwise exonerated them of wrongdoing—or to preclude Plaintiff from inquiring into the officers' disciplinary histories (Point VII). For the reasons below, the Court should deny the remainder of Defendant's motions in limine.

**I.   PLAINTIFF SHOULD BE PERMITTED TO OFFER EVIDENCE CONCERNING THE PATROL GUIDE**

Defendant wrongly argues that Plaintiff should be prohibited from introducing evidence from the NYPD Patrol Guide because (1) it is not relevant to the legal standard of whether Plaintiff was assaulted or battered, (2) it is likely to confuse the jury. Both reasons fail. Plaintiff should be permitted to introduce evidence from the NYPD Patrol Guide section governing taser usage in 2020 because it is highly relevant information that will not confuse the jury. Ex. A.

The "Second Circuit has rejected defendant's Rule 402 argument 'that the Patrol Guide standard is not relevant'" in police misconduct cases. *McLeod v. Llano*, No. 17 Civ. 6062, 2021 WL 1669732, at *5 (E.D.N.Y. Apr. 28, 2021) (citing *Brown v. City of New York*, 780 F.3d 94, 101 n.11 (2d Cir. 2015)). Even if the Patrol Guide standards are not identical to the legal standards for Plaintiff's claims, "such materials have been found to be relevant in cases involving police misconduct." *Gogol v. City of New York*, No. 15 Civ. 5703, 2018 WL 4616047, at *5 (S.D.N.Y. Sept. 26, 2018) (denying motion to

1

preclude NYPD Patrol Guide provisions); *see also Tardif v. City of N.Y.*, No. 13 Civ. 4056, 2017 WL 3634612, at *6 (S.D.N.Y. Aug. 23, 2017) ("Whether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable."). An NYPD officer's departmental training, rules, and policies are part of the circumstances under which the reasonableness of his use of force must be assessed.

Here, the Patrol Guide directly addresses taser use by NYPD officers. Ex. A. This is not a situation where the Patrol Guide section is only nominally related to the plaintiff's claims. It sets forth departmental standards for officer conduct in the exact scenario at play. Officer Baltzer, who deployed the taser, testified that he was trained to comply with the Patrol Guide's taser-use guidelines. Ex. B. Though not dispositive, the Patrol Guide section is certainly relevant to whether the tasing was appropriate under the circumstances, or whether it was an unlawful assault and battery. It should be allowed for that purpose. *See, e.g.*, *Ross v. Guy*, No. 18 Civ. 1340, 2022 WL 768196, at *8 (Mar. 14, 2022) (permitting reference to "relevant portions of the Patrol Guide"); *Smith v. City of New York*, No. 12 Civ. 4922, 2015 WL 4643125, at *3 (S.D.N.Y. Aug. 4, 2015) ("The Patrol Guide has frequently been accepted as evidence of the standard of care exercised by a police officer.").

There is also very little risk that introducing Patrol Guide evidence will create jury confusion about the relevant legal standard. The Court will instruct the jury about the correct legal standard to apply. And any minimal risk of confusion is far outweighed by the significant probative value of the Patrol Guide. *See* Fed. R. Evid. 403 (the Court may "exclude relevant evidence if its probative value is *substantially* outweighed by a danger of" confusion).

If the Court has any concerns about juror confusion, a limiting instruction—not preclusion of the evidence—is the best way to mitigate the risk. *See Martinez v. City of New York*, No. 16 Civ. 79, 2022 WL 17090267, at *14 (E.D.N.Y. Nov. 18, 2022) (declining to preclude Patrol Guide evidence and noting that "courts may include a limiting instruction to the jury that no one piece of evidence is dispositive when deciding whether an officer acted reasonably."); *Gogol*, 2018 WL 4616047, at *5.

Defendant's motion to preclude evidence from the Patrol Guide should be denied. Plaintiff should be permitted to introduce evidence from the relevant section concerning taser use in 2020.

## II. PLAINTIFF SHOULD BE PERMITTED TO TESTIFY CONCERNING HIS INJURIES AND THEIR CAUSE

Defendant's motions III and IV present a convoluted, multi-step argument to preclude all evidence of Plaintiff's wrist injury, which is a substantial component of his damages. Defendant's motion rests on two fundamentally misleading assertions.

First, Defendant tries to make Plaintiff's injuries seem more complex by using the full medical terminology. In simple terms, Plaintiff suffered a dislocated tendon on the pinky side of his wrist. A subluxation of the extensor carpi ulnaris subsheath may *sound* complicated, but the same fallacious attempt to overly complicate can be made for any injury. For example, a jury can easily understand that falling on one's shoulder can cause a dislocated shoulder; referring to the injury as an "anterior glenohumeral joint subluxation" (the proper medical term) does not change that.

Second, there is no basis other than defense counsel's speculation to suggest that Plaintiff's occupation caused his wrist injury. While Dr. Rosenbaum testified that *some* people can suffer a tear of this tendon from repetitive motion like a golf or tennis swing,

3

there is no record evidence suggesting that repetitive motion caused *Plaintiff*'s injury. To the contrary, Dr. Rosenbaum testified that loading garbage bags into a truck (among Plaintiff's responsibilities as a New York City Department of Sanitation worker) "doesn't seem like the same motion" as other potential causes of this injury. Rosenbaum Tr. 81:10-24. Dr. Rosenbaum did not form an opinion about the cause of Plaintiff's injury simply because he did not regard it as his job to do so as a treating physician, *see id*. at 79:24-80:5, not because he was somehow uncertain whether Plaintiff's torn tendon was caused by his work or by his fall after being tased by police.

The answer is straightforward: Plaintiff can testify about the injuries he experienced, the circumstances under which his symptoms arose, and the diagnosis he was given for its effect on his conduct, including his decision to undergo surgery. Dr. Rosenbaum can explain Plaintiff's injury in medical terms and testify about his diagnosis and treatment of Plaintiff. A jury can then assess the evidence altogether to determine the cause and extent of Plaintiff's injuries.

### A.     Plaintiff Should Be Permitted to Testify About His Diagnosis

Plaintiff should be permitted to testify about the nature and extent of his injuries, including physical pain at the time of the tasing, subsequent wrist pain and related symptoms, treatment by Dr. Rosenbaum (including the fact of his diagnosis), and any ongoing pain or other symptoms. These subjects fall squarely within the Plaintiff's first-hand knowledge and experience.

As part of Plaintiff's testimony about his injuries, he should be permitted to testify about the diagnosis Dr. Rosenbaum made. *See Mercado v. Dep't of Corrections*, No. 16 Civ. 1622, 2019 WL 625697, at *2 (D. Conn. Feb. 14, 2019) ("Plaintiff can testify as to the fact of his alleged injuries, including the past mental health diagnoses and

4

treatment he received . . . with a foundation which supports a finding that Plaintiff has personal knowledge of these matters."). Plaintiff does not intend to testify about the basis for the diagnosis, nor will he testify about matters that require medical expertise under Fed. Rule Evid. 702. But it would be unnecessarily confusing to a jury if Plaintiff provided a blow-by-blow account of his wrist injury and efforts to seek treatment, but then could not testify about the ultimate diagnosis and how that informed his treatment and decision to undergo surgery.

Defendant's authorities support the proposition that a layperson may not testify about their diagnosis *absent* accompanying medical records or testimony by a physician or expert—not that they can never do so. For example, in *Vogel v. Riverhead County Jail*, 2012 WL 1450560 (E.D.N.Y. Apr. 19, 2012), there was no expert to explain or support the testimony that the plaintiff sought to offer about her diagnosis. *See also Kokoska v. City of Hartford*, No. 12 Civ. 1111, 2014 WL 4724879, at *3 (D. Conn. Sept. 23, 2014) ("Plaintiff, as a layman, may not testify that he suffers from a particular psychological condition as a result of the incident w*ithout an accompanying diagnosis by a qualified medical professional . . . .*") (emphasis added). Here, the opposite is true: Dr. Rosenbaum will testify about the diagnosis that he made. There is therefore no risk of misleading the jury. Plaintiff should be permitted to testify about diagnosis as part of his direct testimony.

Further, Plaintiff's testimony about Dr. Rosenbaum's diagnosis is not hearsay under Fed. R. Evid. 801. It is not being offered for the truth of the matter asserted, but rather for its effect on the listener—that is, to give context to Plaintiff's decisions about his treatment, like his decision to undergo surgery. Without this context, the Plaintiff will not be able to explain the course of his treatment. It will make no sense—and

5

prejudicially undermine Plaintiff's own credibility—for Plaintiff to explain that he saw a doctor and decided to undergo surgery without stating his diagnosis.

To the extent that Defendant is concerned about Plaintiff *naming* his diagnosis, Plaintiff would agree to use the phrase "wrist injury" or something of that nature during his direct testimony. This would obviate Defendant's concerns about Plaintiff testifying about matters requiring specialized knowledge but would still allow Plaintiff to explain his injury and treatment as he experienced it.

### B. Plaintiff Should Be Permitted to Testify About the Cause of His Injuries

The Court should allow Plaintiff to testify about his belief about the cause of his injuries. An expert is not required to opine on the cause of an injury when "jurors may draw upon their own everyday experiences and observations to comprehend the facts and come to their own conclusions as to causation." *Byfield v. Chapman*, 141 F. Supp. 3d 221, 225 (W.D.N.Y. 2015); *see also Ulfik v. Metro N. Commuter R.R.*, 77 F.3d 54, 58 (2d Cir. 1996) ("trier of fact could reasonably determine, without expert testimony, that prolonged exposure to paint fumes would cause headache, nausea, and dizziness"). Plaintiff's injury is precisely the type that jurors can use their everyday experiences to understand: Plaintiff fell on his wrist, and he suffered a wrist injury.

The principle applies even where, as here, "Plaintiff was subjected to a harmful event and, days later, suffered from a physical injury directly related to that event." *Byfield*, 41 F. Supp. 3d at 225. Despite Defendant's assertion, a delay in symptom onset does not negate the rule that a Plaintiff may testify about the cause of their own injuries. In *Byfield*, the court permitted the plaintiff to testify that he experienced blood in his urine days after a beating occurred. There, the jury was correctly permitted to "assess

6

whether that [injury] was caused by the [incident] or by . . . an underlying condition." *Id.* It would be especially unfair to exclude causation testimony based on symptom-onset delay in this case, where delay is consistent with the injury Dr. Rosenbaum diagnosed. Rosenbaum Tr. 25:23-26:6.[1]

The cases Defendant cites involve issues far more complex than a fall and subsequent wrist injury. For example, in *Barnes v. Anderson*, 202 F.2d 150 (2d Cir. 1999), the Second Circuit held that expert testimony was required to opine that court officers who hit the plaintiff on her back caused her to miscarry. Expert testimony was needed because miscarriage "is the sort of complex injury for which expert medical evidence of causation is required" and because the plaintiff "was physically assaulted by others subsequent to the incident" in a manner that could have also caused the miscarriage. *Id.* at 160. Likewise, in *Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004), an expert was needed to opine that exposure to certain chemicals caused the decedent to develop cancer, not his twenty-year smoking habit. These cases involve complicated diagnoses with multiple possible causes, and it is thus understandable why the courts were reluctant to permit causation testimony solely from the plaintiff.

Defendant's reliance on *Gyllenhammer v. American National Red Cross*, No. 15 Civ. 1143, 2017 WL 11295795, at *1-2 (N.D.N.Y. Nov. 16, 2017) is similarly misplaced. As in *Barnes* and *Wills*, *Gyllenhammer* held that a plaintiff could not testify about the

---

[1]   Q.   And how would that happen, that it would take a week for any swelling to show up?

    A.   Some injuries present in a delayed fashion, such as if there's instability that's created by the initial injury. There may not be very much swelling or there could be swelling that's not noticed initially, and then as that instability progressed and the structures that are unstable continue to get inflamed, there can be an increase in swelling.

cause of his diagnoses because there was record evidence of other potential causes. In *Gyllenhammer*, the plaintiff was diagnosed with a shoulder tear that was common to observe in persons with shoulder dislocations, and the record indicated that the plaintiff had previously dislocated his shoulder *and* suffered additional shoulder pain following a separate incident. *Id*. Also, *Gyllenhammer* only held that the plaintiff could not testify that the incident caused the specific *diagnoses* made by his treating physician; it did *not* preclude Plaintiff from testifying that the incident caused his *injuries* generally, including pain and other symptoms. *Id*. at *3 ("where one is testifying about his own physical condition, the *cause* of injury is an inference a lay person may be able to draw.") (citing *Byfield*, 141 F. Supp. 3d at 224). *Gyllenhammer* does not support Defendant's assertion that Plaintiff should not be permitted to provide any testimony about the cause of his injury.

    The rationale of *Gyllenhammer* does not apply here. The record is devoid of any evidence suggesting another cause of Plaintiff's injury. Plaintiff testified that he never injured his left wrist prior to September 2, 2020[2]. Harris Tr. 39:11-13. Defense counsel cites no testimony from Dr. Rosenbaum—and none exists—identifying Plaintiff's work activity as a potential cause of his injury. Nor does Defendant have a medical expert of its own. Defendant's purely speculative theory that Plaintiff sustained a torn tendon loading trash into trucks is perhaps grist for cross-examination, but it is not a basis to preclude Plaintiff's or Dr. Rosenbaum's testimony on this subject. *See Rodriguez v.*

---

[2]    Q.    Prior to September 2, 2020, had you ever injured your left wrist?
      A.    No.

8

*Robinson*, 2019 WL 5865115, at *2 (S.D.N.Y. Nov. 8, 2019) ("Because plaintiff is entitled to testify about his belief as to the causation of his injuries, this motion is denied.").

Because a jury can use common sense to understand that Mr. Harris fell to the ground and suffered a wrist injury, and because there are no complicated issues involving causation, Plaintiff should be permitted to testify about the cause of his injuries.

### III.    DR. ROSENBAUM SHOULD BE PERMITTED TO TESTIFY

Defendant seeks to preclude Dr. Rosenbaum's testimony in its entirety, arguing that (1) he cannot offer an admissible opinion as to the causation of Plaintiff's injury, and (2) absent expert causation testimony, Dr. Rosenbaum cannot testify about the injury at all. Plaintiff does not intend to elicit testimony from Dr. Rosenbaum about the cause of Plaintiff's injury; Dr. Rosenbaum did not form any such opinion because he did not believe it was his role to do so. But as Plaintiff's treating physician, he clearly should be permitted to opine on his diagnoses and treatment of Plaintiff's wrist.

Defendant's argument that Dr. Rosenbaum cannot testify is completely premised on its incorrect argument that Plaintiff cannot testify about causation. But as discussed above, Plaintiff is permitted to testify about this subject because jurors can use their common sense to understand that a natural consequence of falling on one's wrist is injuring it. *Ulfik*, 77 F.3d at 58. Dr. Rosenbaum's testimony will explain Plaintiff's wrist injury in medical terms, as well as his treatment of that injury. This is straightforward medical treatment testimony that is standard in countless cases involving physical injuries. *See Buczakowski v. Crouse Health Hosp., Inc.*, No. 18 Civ. 330, 2022 WL 168902, at *2 (N.D.N.Y. Jan. 22, 2022) (treating providers "allowed to testify as fact witnesses regarding their testing diagnoses, and treatment of plaintiff, including

9

opinions as to causation of medical issues, so long as that testimony stems from personal knowledge gained from their treatment of Plaintiff."); *see also Mercado*, 2019 WL 625697, at *2 (same). After Plaintiff's testimony, there will be nothing confusing about this evidence.

Because Defendant's argument to preclude Dr. Rosenbaum flows from its prior argument to preclude causation testimony, its briefing on this issue is just a recast of prior points. The argument that there are "multiple etiologies" for Plaintiff's injury is unsupported by record evidence and best reserved for cross-examination. Likewise, a delay in symptom onset does mean Plaintiff cannot testify about causation. If anything, Dr. Rosenbaum's testimony will be helpful in explaining that this delay is consistent with the injury that he observed. *See* Rosenbaum Tr., *infra* n. 2.

There is plenty of relevant testimony that Dr. Rosenbaum can offer. He can explain the nature of Plaintiff's injury. He can testify about his diagnosis of Plaintiff's injury, treatment options, and his treatment of Plaintiff. This testimony is standard for a treating physician and will be useful to the jury in its evaluation of Plaintiff's injury. *See Buczakowski*, 2022 WL 168902, at *2.

## IV.  LIABILITY AND DAMAGES SHOULD NOT BE BIFURCATED

The Court should deny Defendant's request to bifurcate liability and damages because it promotes inefficiency and a single trial presents minimal risk of prejudice. Although Defendant presents its current bifurcation request—to "present any additional evidence on the issue of damages" only after the jury returns a plaintiff's verdict on liability—as different from its prior bifurcation request that the Court denied, it still promotes judicial inefficiency and inconvenience to the parties, witnesses, and Court.

Bifurcation "is the exception rather than the rule." *Collado v. City of New York*, No. 11 Civ. 9041, 2017 WL 4533772, at *2 (S.D.N.Y. Sept. 27, 2017) (citing *Kerman v. City of New York*, No. 96 Civ. 1764, 1997 WL 666261, at *5 (S.D.N.Y. Oct. 24, 1997). "The moving party bears the burden of establishing that bifurcation is warranted," and bifurcation is not appropriate where "there is overlap between the liability and damages witnesses and limited risk of prejudice to Defendants," or where "it is not anticipated that the damages issues at trial will be especially complex or time-intensive." *Kerman*, 1997 WL 666261, at *5.

This case presents significant overlap between liability and damages evidence. Defendant proposal that Plaintiff's testimony "be separated into the facts of the incident . . . and the separate issues of his alleged physical injury and lost overtime pay" ignores that Plaintiff also suffered physical injury and emotional distress *during* the incident to which he is entitled for compensation. As Plaintiff testified at his deposition, he experienced hip pain, bruising, and lacerations during the incident itself, as well as significant emotional distress. If the case is bifurcated, Plaintiff would have to first testify about his experience being tased *without* describing these injuries, and then testify about the same experience *with* describing these injuries. Further, Plaintiff's ex-wife, Joy Harris, is also a witness to both the underlying incident and Plaintiff's emotional and physical injuries. It would burdensome, inefficient, and confusing for both Plaintiff and Ms. Harris to testify and be subject to cross-examination twice. *Mensler v. Wal–Mart Transp., LLC*, 2015 WL 7573236, *4 (S.D.N.Y. 2015) ("The evidence in this matter regarding liability and damages, while separate and potentially severable, overlaps. For example, [two witnesses] will testify to both liability and damages").

11

Next, while the damages here are serious, they are not complex. Plaintiff suffered a wrist injury and subsequently missed work. Plaintiff intends to call a single additional witness, Dr. Rosenbaum, to testify about his physical injuries. Despite Defendant's attempts to overblow the complexity of his testimony, Plaintiff expects that Dr. Rosenbaum's direct examination will be a straightforward account of his diagnosis and treatment of Plaintiff and last about one hour. That Dr. Rosenbaum's testimony will include an explanation of Plaintiff' injury and treatment does not render it especially complicated. Defendant's position borders on suggesting that bifurcation is *per se* warranted in any case involving a physician damages witness.

Further, Defendant overstates the risk of unfair prejudice to the Defendant that would result from juror sympathy. Despite Defendant's protestations, this argument applies equally in principle to every case and there is nothing about Plaintiff's injuries that "raise[s] an unusual risk of juror sympathy." *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 434 (W.D.N.Y. 2017). Courts have thus declined to bifurcate in matters that are much likelier to sway juror emotions than this one. *See Mensler*, 2015 WL 7573236 at *3-4 (S.D.N.Y. Nov. 24, 2015) (reviewing cases, including wrongful death and other serious injury cases, and declining to bifurcate); *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283, 285 (D. Conn. 2004) ("[T]he same observation [of juror prejudice] could be made in any case involving traumatic injuries or death. Yet, the issues of liability and damages are routinely tried, even in cases of death or severe injury.").

Likewise, Defendant's argument that Plaintiff's injury "could lead a jury to improperly assume that there was a greater degree of force used" is a real stretch. It is undisputed that the force used on Plaintiff was a taser. It is rank speculation that a jury

12

will ignore an undisputed fact and improperly assume that *more* force was used due to Plaintiff's injury—especially since falling and sustaining a wrist injury is a natural and foreseeable consequence of being tased. *See* Baltzer Tr. 44:7-12.[3]

In any event, the cure for potential prejudice arising from juror sympathy is a curative instruction, not bifurcation. *Lewis v. City of New York*, 689 F. Supp. 2d 417, 429 (E.D.N.Y. 2010); *see also Mensler*, 2015 WL 7573236 at *2 (finding prejudicial effect of damages evidence could be cured with a limiting instruction where the plaintiff suffered injuries including traumatic brain injury, nasal bone fracture, and other permanent physical injuries). If the Court is concerned about this issue, it can issue such an instruction. It should not bifurcate the trial.

## V. THE COURT SHOULD NOT INSTRUCT THE JURY THAT PLAINTIFF'S ARREST WAS LAWFUL

There is no justification for a jury instruction that Plaintiff's arrest was lawful. The charges against Mr. Harris were resolved by adjournment in contemplation of dismissal with immediate sealing several months after the incident. Nothing about the disposition of the charges conclusively establishes the lawfulness of the arrest. Furthermore, the basis for Plaintiff's arrest is a comparatively minor fact in this case, and it is not likely to be the subject of extensive testimony or evidence. It is hard to imagine a jury *sua sponte* deciding to assess the legality of the arrest when it is not part of the claims in the case.

---

[3]   Q.   It is foreseeable that someone may fall if you TASE them, right?
     …
     A.   They may sometimes fall.

13

To the extent the Court is concerned about this issue, it can give an instruction that the jury should not consider the lawfulness of Plaintiff's arrest when making its decision. *See McLeod*, 2021 WL 1669732, at *10 ("I will give a limiting instruction that the lawfulness of plaintiff's arrest is not at issue."). It should refrain from issuing what amounts to a substantive ruling of law on a claim not before it.

## VI. PLAINTIFF DOES NOT INTEND TO ARGUE OR ELICIT TESTIMONY ABOUT OTHER INSTANCES OF UNRELATED POLICE ACTIONS, BUT SHOULD NOT BE PRECLUDED FROM USING SPECIFIC WORDS OR PHRASES

Plaintiff does not oppose Defendant's motion to preclude Plaintiff "from referring to other unrelated purported instances of police misconduct." Plaintiff does not intend to rely on such instances at trial.

However, Plaintiff does oppose Defendant's attempt to bar Plaintiff from "using terminology and colloquialisms including but not limited to terms or phrases as 'send a message.'" Other than the phrase "send a message," it is unclear what language Defendant seeks to preclude with this motion. The Court cannot rule on this motion in a manner that gives Plaintiff any clarity as to the scope of permissible statements at trial. Accordingly, the Court should deny this motion. To the extent Defendant believes any of Plaintiff's closing argument is somehow improper, it should raise any appropriate objections with specificity at the relevant time. *See Gogol*, 2018 WL 4616047, at *6 (denying motion in limine to preclude certain words and noting it "would be imprudent . . . to preclude the use of particular words or phrases in advance of trial").

## VII. PLAINTIFF SHOULD BE PERMITTED TO SUGGEST A DOLLAR AMOUNT FOR DAMAGES TO THE JURY

Plaintiff should be permitted to suggest specific dollar figures to aid the jury in its assessment of damages. The Second Circuit has adopted a "flexible approach" on this

14

issue, holding that "[i]t is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). Plenty of district courts routinely allow such suggestions. *See, e.g.*, *Dunham v. Lobello*, No. 11 Civ 1223, 2023 WL 3004623, at *7 (S.D.N.Y. Apr. 19, 2023) ("The Court will allow the Plaintiff to suggest a specific amount from the jury."); *Collado*, 2017 WL 4533772, at *4 ("In its discretion, the Court will allow Plaintiff in this case to request the jury award her a specific dollar amount."); *Newton v. City of New York*, 171 F.Supp.3d 156, 172 & n. 94 (S.D.N.Y. 2016) (rejecting argument that counsel impermissibly suggested a dollar figure for damages summation because the Second Circuit allows it). Concerns about the weight of such a suggestion can be addressed with a limiting instruction stating that numbers offered by counsel are merely a suggestion and the jury should make its own assessment of damages based on the evidence. *See, e.g.*, *Collado*, 2017 WL 4533772, at *4.

At the very least, Plaintiff should be permitted to suggest a dollar figure for his economic damages, which are supported by concrete evidence of Plaintiff's lost wages that will be admitted during his case-in-chief. *See, e.g.*, *Scoma v. City of New York*, No. 16 Civ. 6693, 2021 WL 1784385, at *13 (E.D.N.Y. May 4, 2021) (prohibiting suggestion of a dollar amount for pain and suffering, but permitting suggestion of a "specific dollar amount regarding other compensable damages he alleges to have suffered as a result of the defendants' actions, so long as any figure submitted to the jury is supported by the trial evidence admitted during plaintiff's case in chief and defendants have an opportunity to respond."). These are calculable damages that will be established through Plaintiff's pay stubs. Defendant will have the opportunity to cross-examine Plaintiff

15

about them. No impropriety could result from Plaintiff's counsel merely reciting the dollar figure for lost wages that is supported by this evidence. The Court should permit it.

Dated:     September 7, 2023
           New York, New York

                                              KAUFMAN LIEB LEBOWITZ
                                              & FRICK LLP

                                               /s/ Alanna Kaufman
                                              Douglas E. Lieb
                                              Alanna Kaufman

                                              18 E. 48th Street, Suite 802
                                              New York, New York 10017
                                              (212) 660-2332

                                              *Attorneys for Plaintiff*